Ismael CAVAZOS, By and Through his Guardian and mother Carlota CAVAZOS, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–2046.

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1985.

John Gano, Houston, Tex., for plaintiff-appellant.

James R. Gough, Jr., C.J. (Neil) Calnan, Asst. U.S. Attys., Houston, Tex., Marjory Colvin, Asst. U.S. Atty., Brownsville, Tex., for defendant-appellee.

Before GARZA, POLITZ, and HILL, Circuit Judges.

### OPINION

POLITZ, Circuit Judge:

This appeal asks the question: Are Junior Reserve Officer Training Corps (JROTC) instructors "employees" of the government within the meaning of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–80? Answering in the negative, the district court dismissed the complaint of Ismael Cavazos. Agreeing, we affirm.

### BACKGROUND

In October 1981, Cavazos, then 18 years of age, was a student at Hanna High School in Brownsville, Texas, a part of the Brownsville Independent School District (BISD). Cavazos participated in Hanna High's JROTC activities and was an alternate member of the drill team. The JROTC program was directed by Major David L. Ervin, USA, Retired, assisted by First Sergeant Silas C. Carter, USA, Retired, drill instructor, and First Sergeant Clyde Burris, USA, Retired, firearms instructor. Because all three had been certified by the Army as qualified JROTC instructors, the Army reimbursed BISD for

one-half of their minimum salary. 10 U.S.C. § 2031(d)(1).[1]

On Friday, October 9, 1981, the members of the drill team, under their student leaders, decided to have an unofficial practice session on the school grounds the next morning. Such unscheduled Saturday practice sessions, which violated both JROTC and BISD rule, occurred fairly regularly during the fall of 1981. No JROTC instructor ever attended. Just before the practice session, while engaged in horseplay Cavazos suffered a tragic injury which rendered him a quadriplegic.

Upon conclusion of the administrative process, 28 U.S.C. § 2675, the instant action was filed, alleging negligence in supervision.[2] Upon completion of discovery, the government moved for summary judgment. Finding no genuine issue of material fact and concluding that the JROTC instructors at Hanna High were not employees of the government, the district court granted the motion, dismissing the claim made on behalf of Cavazos.

## APPLICABLE LAW

The sole question presented[3] asks whether the JROTC instructors were employees of the federal government, for whose negligence the United States may be held liable, or employees of the school district as an independent contractor, in which case the government could not be held accountable. 28 U.S.C. § 2671; *Lathers v. Penguin Industries, Inc.,* 687 F.2d 69, 72 (5th Cir.1982) ("[T]he United States is not liable for the negligence of an independent contractor with the Government.").

■ Whether one is an employee of the United States or of an independent contractor is determined by reference to federal law. *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Quilico v. Kaplan,* 749 F.2d 480 (7th Cir.1984); *Lurch v. United States,* 719 F.2d 333 (10th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984). The test to be applied was enunciated by the Supreme Court in *Logue* and in *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

■ In *Logue* the Court noted that the determination turns on "the authority of [the government] to control the detailed physical performance of the contractor." 412 U.S. at 527–28, 93 S.Ct. at 2219–20. In *Orleans* the Chief Justice, for a unanimous Court, refined and expanded upon the *Logue* elucidation, focused the analysis on "the power of the Federal Government 'to control the detailed physical performance of the contractor,'" 425 U.S. at 814, 96 S.Ct. at 1976, and held that the key "is not whether the ... agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815, 96 S.Ct. at 1976 (footnote omitted). The Court added that the applicability of regulations which "fix specific and precise conditions to implement federal objectives ... [does] not convert the acts of ... state governmental bodies into federal governmental acts." *Id.* at 816, 96 S.Ct. at 1976 (footnote omitted). With this clear guidon, we consider the case at bar.

## ANALYSIS

■ The evidence before us establishes beyond peradventure that under the *Logue-Orleans* "daily-detailed-control" test, the Hanna High JROTC instructors were not federal employees, defined in 28 U.S.C.

---

1. The minimum salary paid a JROTC instructor under 10 U.S.C. § 203(d)(1) is the difference between his retirement and active duty pay, exclusive of hazardous duty pay. The military branch involved reimburses the school district one-half this amount. The school authorities may opt to pay the instructors more but the reimbursement does not exceed one-half the minimum salary.

2. The United States filed a third-party complaint against the BISD. This action was dismissed because independent school districts are not covered by the Texas Tort Claims Act. Tex.Rev. Civ.Stat.Ann. art. 6252–19A (Vernon Supp.1985).

3. Plaintiff also suggests liability on the part of the United States for the alleged negligence of the student leaders. We find no merit whatever in this claim.

§ 2671 as "officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

Major Ervin and Sergeants Carter and Burris were not "members of the military or naval forces of the United States" at the time of the Cavazos accident. They were retired military personnel; they were civilians. Any doubt that might be harbored as to their status evanesces in light of the language of 10 U.S.C. § 2031(d)(2): "Notwithstanding any other provision of law, such a retired member [of the military serving as a certified JROTC instructor] is *not,* while ... employed [as a JROTC instructor], considered to be on active duty or inactive duty training for any purpose." (Emphasis added.) *See also* 32 CFR § 536.3(*l* ) (defining military personnel for purposes of the FTCA and 32 CFR § 536.29 as "members of the Army on active duty for training, or inactive duty training").

Since the JROTC instructors were not members of the military or naval forces, Federal Tort Claims Act liability can only attach if they were civilian employees of the federal government. Cavazos argues that under 32 CFR § 536.29(e)(2)(vi) [4] or (e)(3)(iii) [5] or (iv),[6] the JROTC instructors at Hanna High were civilian federal employees. We consider this claim against the backdrop of 32 CFR § 536.3(b) defining a "civilian employee" of the Army as "a person whose activities the Government has the right to direct and control not only as to the result to be accomplished but also as to the details and means by which this result is accomplished." We view this as the equivalent of the *Logue-Orleans* daily-detailed-control test. So viewed, to be civilian employees of the Army the Hanna High JROTC instructors had to be under the daily, detailed control and supervision of the Army.

The depositions and documentary evidence clearly reflect that the daily supervision and control of the JROTC instructors came exclusively from the BISD. The Army certified the instructors and provided manuals, uniforms, general program guidelines, and performed an annual inspection. But the Army was not involved in the day-to-day operation and control.

Major Ervin testified that the principal of Hanna High was his immediate supervisor. This is consistent with the Army regulation governing the JROTC programs which provides that the senior instructors "as departmental heads (or equivalent status), are responsible to school officials for conducting the program." AR 145–2 § 6–38(1). Major Ervin stated that he received his directions from the high school administration and that the day-to-day regulations and control came from the principal. Major Ervin negated the suggestion that the Army supervised the program on a day-to-day basis. His testimony was corroborated by the principal and by Sergeant Carter.

The employment contract between BISD and the instructors further supports the conclusion that the instructors were employees of the BISD. In that contract BISD retained the power to hire, fire, assign, and reassign the instructors as it saw fit. The Army could neither terminate, direct, nor interrupt BISD's employment of any JROTC instructor. At most, the Army could refuse to certify or could decertify an instructor, thereby relieving itself of the obligation to pay one-half the minimum salary. But that certification action would have no other effect on the JROTC program.

Finally, we note that the pamphlet describing the JROTC program states that control of JROTC curriculum is, within cer-

---

**4.** 32 CFR § 536.29(e)(2)(vi) provides that "[c]ivilians serving as ROTC instructors paid from Federal funds" are employees of the Army.

**5.** 32 CFR § 536.29(e)(3)(iii) includes as employees of the Army "[v]olunteer workers in an official capacity in furtherance of business of the United States" but also provides that "it is

difficult to establish that [an] organization is a 'Federal agency' ...."

**6.** 32 CFR § 536.29(e)(3)(iv) includes as employees of the Army: " 'Loaned servants.' " This section expressly exempts independent contractors and their employees from the regulation.

tain limits prescribed by the Army, the prerogative of the host school's officials and faculty.

Plaintiff would counter this evidence by arguing that the Hanna High JROTC instructors were responsible to the Army's Third ROTC Region Command for carryinig out the Army's orders and policies and for ensuring that the Hanna program met all Army JROTC specifications and curriculum requirements. The level of Army oversight demonstrated is too general in nature to offset the explicit evidence showing that BISD exercised daily control over the JROTC instructors. Sergeant Carter made this clear when he distinguished between BISD's daily control and general Army oversight at the policy level. As the sergeant stressed, Third ROTC Region Command did not dictate daily procedures; that was the exclusive perquisite of the school authorities. The Army sought only to ensure that its goals and objectives were satisfied. As the Supreme Court taught in *Orleans*, the fact that BISD had to comply with certain regulations and curricula established to meet Army objectives was not enough to "convert the acts of [BISD] into federal governmental acts." 425 U.S. at 816, 96 S.Ct. at 1976; *see also id.* at 815, 96 S.Ct. at 1976.

Synopsizing, we find that Army involvement in certifying the instructors, providing manuals and uniforms, paying one-half the minimum salary of the certified instructors, providing broad outlines and goals, and conducting an annual inspection of the Hanna High JROTC unit was insufficient to satisfy the *Logue-Orleans* test. *See Wood v. Standard Products Co., Inc.*, 671 F.2d 825 (4th Cir.1982); *Brooks v. A.R. & S. Enterprises, Inc.*, 622 F.2d 8 (1st Cir. 1980); *Gibson v. United States*, 567 F.2d 1237 (3d Cir.1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).[7]

We are further persuaded that the JROTC instructors were not civilian employees of the Army, as defined by 32 CFR § 536.3(b). Were we to read 32 CFR § 536.29(e)(2)(vi) as including JROTC programs in its references to ROTC, the Hanna High instructors would still not be covered, for the reasons above stated.[8] Similarly, the instructors were not covered by either of the subparts of 32 CFR § 536.-29(e)(3) relied on by plaintiff, (iii) and (iv),— that regulation excepts certain volunteers and also independent contractors and their employees.

We therefore conclude that the Hanna High JROTC instructors were not employees of the United States within the intendment of the Federal Tort Claims Act.

The judgment of the district court is AFFIRMED.

---

**7.** We further note various indications of congressional intent that civilian JROTC instructors were not to be considered federal employees. *See* 10 U.S.C. § 2031(d); Sen.Rep. No. 1514, 88th Cong., 2d Sess. 2, *reprinted in* 1964 U.S. Code Cong. & Ad.News 3943, 3944; H.Rep. No. 925, 88th Cong., 1st Sess. 26, *reprinted in* 110 Cong.Rec. ——, ——, *cf.* 32 CFR § 111.7(a)(2) & (3); 32 CFR § 111.7(b)(3).

**8.** Although 32 CFR § 536.29(e)(2)(vi) refers to "[c]ivilians serving as ROTC instructors" and not to "civilian employees," we perceive no difference between the two as to the question posed; in either case the daily-control test would have to be met.