**William M. WALTER, et al.,
Plaintiffs–Appellants,**

**v.**

**Oscar FIORENZO, et al.,
Defendants–Appellees.**

**Appeal of ESLER, STEPHENS & BUCK-
LEY, an Oregon partnership, Esler &
Schneider, an Oregon partnership, Jacobs, Burns, Sugarman & Orlove, an
Illinois partnership.**

No. 87–1386.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1987.

Decided Feb. 8, 1988.

As Amended Feb. 17, 1988.

Kim T. Buckley, Esler, Stephens & Buckley, Portland, Or., for plaintiffs-appellants.

Andrew T. Staes, Jeffrey Neal Cole, Ltd., Chicago, Ill., for defendants-appellees.

Before CUDAHY, POSNER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Nearly four years after instituting this action plaintiffs-appellants' counsel, Esler, Stephens & Buckley, Esler & Schneider, and Jacobs, Burns, Sugarman & Orlove (collectively "plaintiffs' counsel" or "counsel") were unable to articulate a factual basis for plaintiffs' claim against defendant-appellee, Oscar Fiorenzo ("Fiorenzo"). During that four-year period, three other defendants, in virtually the same position as Fiorenzo, obtained summary judgments in their favor. The last defendant had requested, but was denied sanctions. Ultimately, Fiorenzo followed suit and sought summary judgment alleging he was not involved with the sale of the securities in question. Plaintiffs' counsel—after a delay for additional discovery—did not file any affidavits opposing Fiorenzo's summary judgment motion. The district court granted Fiorenzo's motion for summary judgment and awarded attorneys' fees to Fiorenzo for the cost of the entire case, chargeable to plaintiffs' counsel. Counsel then sought reconsideration of both the motion for summary judgment and the award of fees. In support of the motion to reconsider, plaintiffs' counsel introduced an affidavit purporting to tie Fiorenzo to the fraudulent security sales. Although not obligated to do so, the district court vacated summary judgment and reconsidered plaintiffs' complaint in light of the newly filed affidavit. The court did not, however, vacate its previous order imposing attorneys' fees. Upon reconsideration, the court ruled that the facts in the affidavit did not support plaintiffs' claims that Fiorenzo participated or was a substantial factor in the sale of the securities. However, rather than reinstating its order granting summary judgment in favor of Fiorenzo, the court dismissed the complaint without prejudice for failure to plead securities fraud with particularity. With respect to its previous award of fees, the court indicated that the disruption caused by the belated affidavit would, in any event, result in assessments against plaintiffs' counsel. However, the court gave counsel the opportunity to avoid all other sanctions previously imposed by either alleging sufficient facts to sustain a claim against Fiorenzo under the theories contained in the complaint or by explaining under what other theory Fiorenzo might have been held liable given the facts in the complaint. Plaintiffs' counsel neither refiled against Fiorenzo nor proffered any theory under which Fiorenzo could have been sued in the first place. Accordingly, the court's order, imposing sanctions against plaintiffs' counsel for the costs of the entire suit, remained in effect. This appeal followed.

We affirm the imposition of sanctions against counsel under 28 U.S.C. § 1927 not only for needlessly multiplying these proceedings but for counsels' repeated inability to articulate a viable claim against Fiorenzo after nearly four years of discovery and after the dismissal of three other similarly situated defendants.

I.

On October 19, 1982, William Walter and thirty-nine other plaintiffs filed a five-count complaint against Black Diamond, Inc., Midas Truck Body, Inc., Midas International

Corporation, and several other corporate and individual defendants, including Oscar Fiorenzo. Plaintiffs claimed that the defendants violated federal and Oregon state securities regulations and that all defendants, including Fiorenzo, participated in the sale of "trailer investment contracts" using "the means and the instrumentalities of interstate commerce in connection with the offer and the sale of these unregistered securities to the plaintiffs...." The unregistered investment contracts were allegedly sold by REL Leasing, Inc. ("REL") and Richard Leader ("Leader"),[1] but the individual defendants purportedly participated in the sale of the trailer investments by disseminating false or misleading information. The complaint did not specify how or what information each individual defendant disseminated in connection with the sale of the "investment contracts". Importantly, the allegedly fraudulent sales of trailer investment contracts began in or before 1981.

On September 7, 1983, two defendants, Leonard Smith and Lennard Carlson, filed motions for summary judgment and supporting affidavits, arguing that they could not possibly have participated in the pre-1982 sale of REL investment contracts since they did not become directors of REL Leasing, Inc., until early 1982.

In response to a court order directing them to conduct the necessary discovery to answer Smith's and Carlson's motions for summary judgment, plaintiffs filed a number of document production requests and took the depositions of both Smith and Carlson. Two days before their responses to defendants' motions were due, plaintiffs filed a request for an extension of time. The district court granted the request and gave plaintiffs until March 15, 1984 to respond. When no response was filed on that date, defendants Carlson and Smith renewed their motions for summary judgment. On June 6, 1984, the court granted their unopposed motions after plaintiffs admitted they had insufficient facts upon which to base claims against Smith and Carlson.

On February 27, 1985, another defendant, Joseph A. Roberto, also filed a motion for summary judgment and requested that sanctions be imposed against plaintiffs for naming him in the complaint. Like Carlson and Smith, Roberto filed an affidavit explaining that he became an employee of REL in March, 1982, but was never associated with REL as a director, shareholder, or controlling person and therefore could not have participated in the sale of trailer investment contracts beginning in or before 1981. Roberto claimed he made these facts known to plaintiffs' counsel as early as March, 1983, but that counsel nevertheless refused to dismiss him from this action. Roberto further alleged that because counsel knew, before instituting plaintiffs' suit (or at a minimum, shortly thereafter), that Roberto could not have been involved in the sale of unregistered securities, counsels' failure to dismiss him was vexatious and violated Fed.R.Civ.P. 11. On February 27, 1985, the district court granted Roberto's uncontested motion for summary judgment but did not impose sanctions.

Less than one month later, on March 6, 1985, Fiorenzo filed his motion for summary judgment and request for attorneys' fees. Like the other individual defendants, Fiorenzo filed an affidavit stating he was not a director of REL Leasing. The affidavit also stated that Fiorenzo neither participated in the business of REL Leasing nor in the sale of trailer investment contracts. Fiorenzo's only connection with REL arose in January, 1982, when he became a 3 percent shareholder of REL. Like the others, Fiorenzo argued he could not have participated in the sale of investment securities by REL beginning in or before 1981. Fiorenzo also requested that plaintiffs be sanctioned as a "pre-filing inquiry into the facts or any post-filing discovery would have revealed that Mr. Fiorenzo should not have been sued."

Plaintiffs were given until March 20, 1985, to respond to Fiorenzo's motion. On that day, one of the attorneys for plaintiff, Kim T. Buckley, filed an affidavit stating that further discovery would be necessary

---

**1.** Leader and REL both declared bankruptcy and were dismissed from this action.

to file an adequate response to Fiorenzo's motion.

On July 19, 1985, more than three months after Fiorenzo's motion was filed and almost three years after the complaint was filed, plaintiffs filed their response to Fiorenzo's motion. Plaintiffs alleged first, that summary judgment was inappropriate because certain documentary evidence suggested that Fiorenzo actually became a 3 percent shareholder in REL in late 1981 and not early 1982 and second, that the imposition of sanctions was inappropriate because amended Rule 11 did not apply to pre–1983 pleadings and "plaintiffs' attorneys believed to the best of their knowledge and information, that there was a good ground to support the complaint."

In their memorandum opposing Fiorenzo's motions, plaintiffs conceded that the key issue in proving Fiorenzo's liability under the various securities laws, was "whether he was a 'substantial factor' in causing the securities sales to occur." Yet, despite the fact that Fiorenzo's affidavit stated that he did not participate in the operation of REL Leasing and therefore could not have been a "substantial factor" in the allegedly fraudulent investment contract sales, plaintiffs presented no contravening evidence. Rather, plaintiffs' counsel argued that Fiorenzo's credibility had been called into question and that his entire affidavit should therefore be discredited. More specifically, counsel pointed to a discrepancy between Fiorenzo's assertion that he became a 3 percent shareholder of REL in early 1982 and a stock certificate, produced to plaintiffs by Fiorenzo, which showed that Fiorenzo acquired his 3 percent ownership in REL in late 1981. Counsel claimed this discrepancy was sufficient to raise a genuine issue of fact and accordingly, because Fiorenzo appeared to have lied about his acquisition of REL stock, his

other assertion that he did not participate in the sale of REL investment contracts was also subject to question. Again, no evidence that Fiorenzo actually participated in either the operation of REL or in the sale of trailer investment contracts was presented. Plaintiffs devoted the rest of their response to the issue of sanctions.[2]

Replying to counsels' accusation that he had lied when he said he became a REL stock owner in 1982, Fiorenzo submitted an affidavit from the attorney who handled the issuance of REL stock certificates. This new affidavit stated that any stock certificates issued to Fiorenzo in December, 1981, were erroneously issued and that valid stock certificates were not issued until January, 1982. Fiorenzo argued he had not lied in his affidavit when he stated he acquired a 3 percent interest in REL after the allegedly fraudulent investment sales already had occurred and that even if he did become a stockholder in REL in 1981 and not 1982, that fact, by itself, was insufficient to sustain plaintiffs' claims that Fiorenzo was secondarily liable to them. According to Fiorenzo, "a mere isolated stock purchase is not actionable under the securities laws."

On December 20, 1985, Judge Grady, after a lengthy analysis, granted Fiorenzo's motion for summary judgment and attorneys' fees. In his opinion, Judge Grady initially noted that two other individual defendants had already been granted summary judgment under circumstances similar to those presented by Fiorenzo's motion. The court expressed particular concern about the fact that plaintiffs had failed to reevaluate their case against Fiorenzo in light of the court's earlier rulings and in light of the overall lack of evidence against the individual defendants.

The district court then found that Fiorenzo's motion for summary judgment was ap-

---

**2.** The only affidavit filed by the plaintiffs was that of plaintiffs' counsel, Mr. Buckley, and was submitted solely in opposition to the motion for attorneys' fees. Although the affidavit stated that to the best of counsel's belief Fiorenzo was an investor and participated in REL's operations, the affidavit, even if addressed to the summary judgment motion, contained only conclusory statements of plaintiffs' attorneys and

was simply insufficient to raise an issue of fact with respect to whether Fiorenzo actually participated in the sale of REL investment contracts. Fed.R.Civ.P. 56. *See generally, Valentine v. Joliet Tp. High School Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986); *Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 135–36 (7th Cir.1985).

propriate as no evidence, controverting Fiorenzo's statements that he did not participate in the operations of REL or the sale of REL investment contracts, had been presented by plaintiffs. As Judge Grady succinctly stated in his order granting summary judgment:

Whether [Fiorenzo] received his stock in December, 1981 or January, 1982 is ultimately irrelevant. The real issue is whether the investors have any evidence *that Fiorenzo participated in the sale of unregistered trailer investment contracts.* If Fiorenzo did buy 3 percent of REL's stock at the end of 1981 instead of the beginning of 1982, *that still does not support the investor's allegation that he was in any way involved in the fraudulent sale of the contracts.* (Emphasis added.)

The district court then addressed the issue of attorneys' fees. He initially noted that even if amended Rule 11 was not in effect when plaintiffs filed their complaint against Fiorenzo, sanctions for filing a baseless claim could be imposed under 28 U.S.C. § 1927. Based on the history of plaintiffs' case, the court found that plaintiffs' counsel should have been aware that plaintiffs did not have a sufficient factual basis to file a claim against Fiorenzo. Plaintiffs' broad allegations against Fiorenzo were unsubstantiated and, in any event, counsel should have reevaluated plaintiffs' claims against Fiorenzo after discovery failed to produce any evidence against him and after claims against two other individual defendants were summarily disposed under similar circumstances. The court then assessed costs of the entire case against plaintiffs' counsel. Fiorenzo was ordered to submit a fee petition.

In a belated effort to salvage their claims against Fiorenzo, plaintiffs' counsel then filed a motion to reconsider the court's ruling both on summary judgment and on attorneys fees. In support, Attorney Buckley filed his affidavit and the affidavit of Richard Leander, a CPA who had allegedly (along with his clients) invested in REL contracts. These affidavits, for the first time revealed that plaintiffs' counsel had conferred with Leander before filing suit against Fiorenzo. Both Buckley's and Leander's affidavits stated that Leander's investigation of REL revealed that Fiorenzo's involvement with REL began before 1982 and was more extensive than that of a 3 percent shareholder. According to Buckley, Leander's investigation revealed that Fiorenzo invested in REL in 1980. Leander's affidavit stated he visited REL Leasing four times in 1982 to investigate the 1980 and 1981 investment programs. On each occasion, Leander met with Leader and Fiorenzo, who both assured him repeatedly that the 1980 and 1981 programs' remained viable. According to Leander, Fiorenzo also participated in the dissemination of misleading information to 1980 program investors, assuring them of the program's continued viability. Leander also stated Leader told him Fiorenzo had become an investor in REL in 1981.

The district court ordered both parties to brief the issue of whether it was appropriate for the court to consider the newly submitted evidence after an order granting summary judgment had already been issued—when that evidence could just as easily have been submitted prior to the court's ruling.

Fiorenzo opposed the motion to reconsider both because the newly submitted evidence, purporting to establish his participation in the sale of investment contracts, had been readily available to plaintiffs' counsel before the court issued its order. He also opposed the motion because, even if accepted as true, that evidence still did not support any of the alleged securities fraud claims. Following the submission of briefs, in which Fiorenzo requested additional attorneys fees, the court determined it would reconsider its previous rulings and vacated the grant of summary judgment. The court did not vacate its previous order imposing attorneys' fees.

On June 11, 1986, the district court issued an even more extensive opinion, analyzing Leander's affidavit and its relation to each count of plaintiffs' complaint in which Fiorenzo was named. The court indicated it had only undertaken this analysis

because it did not want to penalize plaintiffs for their attorneys' mistakes. The district court concluded that even if the admissible evidence contained in the Leander affidavit was true, Fiorenzo, at best, could have been accused of retroactively attempting to conceal a securities fraud and that such concealment was, under the present state of the law of secondary liability, probably not actionable. However, the court found it could not conclusively state that plaintiffs had failed to state a claim for secondary liability against Fiorenzo because plaintiffs' pleadings were factually vague. Giving the plaintiffs the benefit of the doubt with respect to the state of the law, the court held the plaintiffs' complaint was deficient pursuant to Fed.R.Civ.P. 9(b) since the complaint contained no factual allegations concerning *how* Fiorenzo or any of the other defendants had purportedly participated in the sale of investment contracts.

The district court then dismissed the complaint in its entirety, without prejudice, and granted plaintiffs' leave to refile against all defendants (not previously dismissed) including Fiorenzo. However, the court permitted refiling on the condition that the amended complaint against Fiorenzo contain sufficient facts to withstand a renewed request for summary judgment and on the condition that plaintiffs "articulate the theory ... under which they [sought] to impose liability on Fiorenzo."

With respect to its previous order imposing fees, the court ruled that if plaintiffs could bring particularized and supportable claims against Fiorenzo in their amended complaint, counsel would not be held responsible for attorneys' fees generated by the whole case. Counsel would only be liable for costs incurred by Fiorenzo in responding to the motion for summary judgment, in responding to the motion to reconsider, and in attending a second deposition of Leader. All of these would have been unnecessary if counsel had submitted the affidavits in opposition to Fiorenzo's motion for summary judgment before a ruling had been issued.

If plaintiffs chose not to name Fiorenzo in their amended complaint, the district court ruled that counsel would be held responsible for the costs associated with filing claims against Fiorenzo unless counsel could show that the initial claims against Fiorenzo might have been reasonable under some other theory of secondary liability.[3]

Counsel filed plaintiffs' amended complaint on July 3, 1986, but did not name Fiorenzo as a defendant. Nor, contrary to the court's order, did counsel explain why Fiorenzo had originally been named as a defendant. Ignoring the court's directive, counsel simply stated that Fiorenzo had not been named in the amended complaint because the district court threatened to impose sanctions. Additionally, counsel again argued that the original claims against Fiorenzo should not have been dismissed because of (1) the discrepancy in Fiorenzo's affidavit, concerning the issuance of REL stock certificates, and (2) CPA Leander's affidavit implicating Fiorenzo in the after-the-sale securities fraud cover-up.

Not surprisingly, the court imposed sanctions against plaintiffs' counsel for all of Fiorenzo's reasonable expenses, including expenses incurred in requesting fees. Recognizing that amended Rule 11 was not in effect at the time counsel filed plaintiffs' complaint against Fiorenzo, the court sanctioned counsel for filing a meritless claim pursuant to 28 U.S.C. § 1927[4] and pursuant to its inherent authority. The district court also sanctioned counsel for needlessly multiplying the proceedings by filing, in effect, a non-response to Fiorenzo's motion

---

3. Although plaintiffs might not have been able to sustain their claims against Fiorenzo in the Seventh or Ninth Circuits under any reasonable theory of liability, the court indicated that it would nevertheless have withdrawn its order imposing sanctions had counsel actually proffered some tenable theory of liability.

4. 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

for summary judgment and then filing a motion to reconsider. These sanctions were imposed under § 1927, Rule 11, and the court's inherent authority. Finally, the district court imposed sanctions against counsel for repeatedly raising arguments previously found to be meritless. These sanctions too, were imposed under § 1927, Rule 11, and the court's inherent authority.

After reviewing an itemized fee petition,[5] the court awarded Fiorenzo $6,918.48 of the $8,506.98 in fees requested. This appeal followed.[6]

## II.

Our analysis of the sanctions imposed in this case necessarily must be divided into two parts since the district court imposed sanctions for two distinct reasons. First, the court imposed sanctions for counsels' failure to properly respond to Fiorenzo's motion for summary judgment. Second, the court imposed sanctions for including Fiorenzo as a defendant in this case. Although the attorneys fees and costs awarded Fiorenzo for each of these reasons were lumped together in one sum by the district court, we must review each award separately.

As indicated above, sanctions for filing a meritless claim were imposed under § 1927 and the court's inherent authority while sanctions for needlessly multiplying the proceedings were imposed under § 1927, Rule 11, and the court's inherent authority. Although the court imposed sanctions for two separate violations, the use of § 1927 is the common thread in the court's order. Therefore, we will not dwell on the application of Rule 11 and the court's inherent authority in our review. It should be noted in passing, however, that Rule 11 applies with equal force to sanctions imposed for

needlessly multiplying the summary judgment proceedings.[7]

An award of fees under § 1927 is given solely to the discretion of the district court and thus, our review of an order imposing sanctions pursuant to § 1927 is a deferential one, subject to the abuse of discretion standard. *In Re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir.1985); *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045 (9th Cir.1985); *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178 (D.C.Cir.1980). "Under the abuse of discretion standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court." *Chicago Newspaper Publisher's Assoc. v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir.1987).

A court may impose sanctions under 28 U.S.C. § 1927, against an attorney where that attorney has acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice", *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983) *quoting Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968) *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969) or where a *"claim [is] without a plausible legal or factual basis and lacking in justification."* *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984); *Overnite Transportation Co.*, 697 F.2d at 794–95 (emphasis added). In determining whether an attorney's actions were objectively unreasonable "a court may infer intent from a total lack of factual or legal basis for a suit." *Id.*

---

**5.** In their response to Fiorenzo's fee petition, counsel *again* attempted to reargue the irrelevant issue of Fiorenzo's credibility.

**6.** Plaintiffs attempted to appeal the district court's order imposing sanctions earlier but we dismissed that appeal finding that it was not ripe for consideration since the amount of fees had not been determined and *counsel*, not the

plaintiffs themselves, were the parties in interest.

**7.** This is not to say the standard of review for Rule 11 sanctions is the same as the standard of review for § 1927 sanctions. *Compare, Brown v. Federation of State Medical Boards of the U.S.*, 830 F.2d 1429 (7th Cir.1987) and *In Re TCI, Ltd.*, 769 F.2d 441 (7th Cir.1985).

If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.

*In Re TCI Ltd.*, 769 F.2d at 445. Moreover, "assessment of fees under § 1927 may [also] be appropriate in other situations, [involving] improper procedural conduct." *Knorr Brake Corp.*, 738 F.2d at 226 n. 1.

On appeal, we must also "consider whether the sanction the district court chose to impose was appropriate" but again "we will reverse a district court's choice of an amount or type of sanction only if we find an abuse of discretion." *Brown v. Federation of State Medical Boards of the U.S.*, 830 F.2d 1429 (7th Cir.1987). Having briefly outlined the applicable standards of review, we now turn to the award of sanctions in this case.

## III.

### A. *Sanctions for Needlessly Multiplying the Proceedings*

As previously described, Fiorenzo moved for summary judgment and filed an affidavit stating that he was never involved with REL Leasing either as a director, manager or in any other capacity until 1982. These facts were not controverted by plaintiffs. Fiorenzo's affidavit also stated that he had become a 3 percent REL shareholder in 1982, well after the allegedly fraudulent sale of securities had occurred. When plaintiffs responded by asserting that this last statement was untrue, Fiorenzo submitted another affidavit stating that the 1981 stock certificates had been issued by mistake. Plaintiffs' counsel seized on the "factual dispute" and repeatedly insisted, in the face of the court's rejection of that argument, that this one discrepancy in Fiorenzo's affidavit called *all* the facts in Fiorenzo's affidavit into question.

■ A motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit. Nor can a party defeat summary judgment by raising one immaterial issue of fact and ignoring the relevant but uncontroverted facts. There must be a genuine issue of material fact which is the basis of at least one of the essential elements of the underlying claim. "Summary judgment is proper only when the moving party has established that there is no genuine issue of *material* fact and he is entitled to judgment as a matter of law." *Roman v. U.S. Postal Service*, 821 F.2d 382, 385 (7th Cir. 1987); Fed.R.Civ.P. 56(c) (emphasis added). Even the "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (Court's emphasis). Whether a fact is material depends on the substantive law underlying a particular claim and "only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment." *Id.* (emphasis added). Whether there is a genuine issue for trial depends on whether there is *"sufficient evidence for a jury to return a verdict for that party."* *Anderson*, 106 S.Ct. at 2511 (emphasis added).

Plaintiffs' counsel argue that Fiorenzo's sworn denial of any involvement with REL was not sufficient to mandate summary judgment in his favor even where plaintiffs did not offer contravening evidence.[8] The Supreme Court has recently ruled that a movant's denial, in the form of a motion for summary judgment, *is* sufficient where the non-movant fails to come forward with

---

**8.** Plaintiffs purport to limit this particular interpretation of Rule 56 to cases where intent and credibility are central issues. A similar argument was rejected by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There the court ruled that a motion for summary judgment, made in a case involving an element of intent, could not be defeated "without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting the jury might ... disbelieve the defendants' denial...." *Id.* 106 S.Ct. at 2514.

facts to support an essential element of the non-movant's claim.

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, *against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,* and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In this instance, plaintiffs failed to submit facts (in response to Fiorenzo's motion for summary judgment) tending to show that Fiorenzo was a "substantial factor in causing investment sales" (one of *the* essential element of plaintiffs' claim). Fiorenzo properly moved for summary judgment on the basis that he was not involved with the sale of investment contracts. Moreover, Fiorenzo could have done so with or without affidavits since he did not have the burden of proving that he was *not* a substantial factor in the investment contract sales.

> ... [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits ... requires the nonmoving party to go beyond the pleadings and ... designate 'specific facts showing there is a genuine issue for trial.'

*Id.* 106 S.Ct. at 2553. As the Supreme Court clearly stated, "[W]e find no express or implied requirement in Rule 56 that the moving party support its motions with affidavits or other similar materials *negating* the opponent's claim." *Id.*

■ Plaintiffs' counsel did not offer affidavits, raising an issue as to Fiorenzo's involvement in REL, until after summary judgment had already been entered. As a result, the order granting summary judgment was ultimately vacated. The time spent by the court, in ruling on Fiorenzo's motion for summary judgment, was completely wasted. Counsel offered no plausible explanation for their failure to submit their affidavits sooner. We therefore affirm the district court's order awarding sanctions under 28 U.S.C. § 1927 for needlessly multiplying summary judgment proceedings.

### B. *Sanctions for Filing Meritless Claims Against Fiorenzo*

■ Under § 1927, sanctions for filing a baseless claim properly may be imposed where those claims are not supported by the facts. "An attorney must ascertain the facts and review the law to determine whether the facts sit within a recognized entitlement to relief." *In Re TCI, Ltd.,* 769 F.2d at 447. The district court imposed sanctions for filing a baseless claim at the same time it granted Fiorenzo's motion for summary judgment. These sanctions were imposed not merely because plaintiffs lost the motion for summary judgment, but because they lost after nearly four years of discovery and after three other similarly situated defendants had been dismissed from the case by the court.

The dismissal of three other individual defendants on the grounds that plaintiffs' counsel had insufficient facts to tie them to REL Leasing should have alerted counsel that it was necessary to fortify the claims against the remaining individual defendants, including Fiorenzo. Counsel could have anticipated that Fiorenzo too, might seek dismissal on the grounds that he was not involved with REL. Counsel should therefore, have shored up plaintiffs' claims against Fiorenzo with sufficient facts or voluntarily dismissed him. In short, it should have been obvious to counsel that if plaintiffs' claims against three individual defendants had already failed because no relationship existed between those defendants and REL, claims against a fourth defendant would likely also fail. Moreover,

prior to Fiorenzo's motion and even thereafter, counsel was given ample opportunity to engage in discovery to obtain facts necessary to connect Fiorenzo to REL.

■ Fiorenzo's motion for summary judgment only served to highlight the steadfast refusal of plaintiffs' counsel to acknowledge the deficiencies in plaintiffs' complaint, deficiencies which previously had been flagged by the court on a number of occasions. The court did not resort to sanctions the first three times but did so the fourth time. Thus, when the district court granted summary judgment (since no factual dispute existed about Fiorenzo's involvement in REL) it justifiably imposed sanctions against counsel for the costs of the entire case. We find that the sanctions imposed at the time of summary judgment, for filing meritless claims against Fiorenzo, were properly imposed under § 1927.

■ Yet in so holding, we wish to make clear that sanctions are not automatically warranted where a party loses a dispositive motion. However, where lengthy discovery and a series of dispositive motions reveal a factual or legal deficiency in a complaint against a defendant, the deficiency should either be remedied or the defendant dismissed.

We have said many times that under the American rule, each party bears its own costs in litigation. However, where appropriate, sanctions may shift those costs. Where a party files a baseless claim, which cannot be supported after four years of discovery and which previously has been identified as baseless as against three other defendants, sanctions are indeed appropriate.

## IV.

Next, we consider whether the district court abused its discretion by awarding fees and costs in an amount of $6,918.48. In *Brown, supra,* decided after the district court issued its order awarding fees and costs to Fiorenzo, we said:

> ... in cases involving substantial awards a district judge [must] state with some specificity the reasons for the imposition

of a sanction, and the manner in which the sanction was computed. What is a "substantial award" is an inquiry that will have to be made on a case-by-case basis, but will generally involve cases in which the award involves a large sum of money or is large in relation to the offending conduct.

830 F.2d at 1438.

■ The district court did provide a written analysis of its award of fees but merged the fees imposed for multiplying summary judgment proceedings with those imposed for filing a meritless claim. Thus, the sanctions awarded in this case ultimately covered the costs of the entire case. Although we do not believe, under the circumstances of this case, that the court's failure to do so constituted an abuse of discretion, a district court should separate its award of sanctions for each type or class of act sanctioned. We also find that, under the circumstances of this case, $6,918.48 does not approach the "substantial award" referred to in *Brown*, and that a detailed breakdown of the award was unnecessary. The district court did not abuse its discretion in awarding Fiorenzo $6,918.48 in fees and costs.

## V.

As a final matter, Fiorenzo has asked this court to impose sanctions against counsel under Fed.R.App.P. 38, and 28 U.S.C. § 1927 for filing a meritless appeal designed to further prolong this matter. Because the law regarding the district court's imposition of sanctions continues to evolve, we will not impose further sanctions for counsels' pursuit of appellate review.

For the foregoing reasons the decree of the district court is

AFFIRMED.