**Carolyn J. McFEELY and Robert T. McFeely, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. IP 87–82–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 18, 1988.

Charles G. Reeder, Holland & Holland, Indianapolis, Ind., for plaintiffs.

Sally M. Rider, Trial Atty., Torts Branch, U.S. Dept. of Justice, Washington, D.C., Gerald Coraz, Asst. U.S. Atty., Indianapolis, Ind., for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This is an action against the United States of America brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, arising out of personal injuries sustained by plaintiff Carolyn McFeely while canoeing on the premises of the Camp Atterbury facility in Indiana. The cause comes before the Court on the motion for summary judgment filed by the United States of America, the plaintiff's response opposing the motion, and the defendant's response thereto filed on June 10, 1988. Oral argument has not been requested, nor does the Court find it necessary or appropriate in accordance with Local Rule 11. The matter is ready for resolution, and for the reasons set forth below, the Court hereby GRANTS the motion for summary judgment in favor of the United States of America and against the McFeelys. JUDGMENT FOR THE DEFENDANT IS ENTERED ACCORDINGLY.

### I. *Undisputed Facts:*

Plaintiffs Robert and Carolyn McFeely are husband and wife and reside in the Southern District of Indiana. On June 9, 1984, Mrs. McFeely was canoeing on the

Driftwood River on the premises of the Camp Atterbury Military Reservation in Bartholomew County, Indiana. Camp Atterbury is controlled and occupied by the Indiana National Guard; the record does not reflect whether the State of Indiana or the United States of America owns the land at Camp Atterbury. Plaintiffs did not pay any admission fee or other consideration to the United States nor to anyone else for the use of the Driftwood River. The United States does not charge or collect, on behalf of Camp Atterbury or the United States, an admission fee or payment of any kind for the use of the Driftwood River.

As Mrs. McFeely approached the Hendricks Ford Bridge in her canoe, Cadet Martin T. Hehman collided with her while participating in a training drill known as a "slide for life" exercise. Mrs. McFeely suffered serious personal injuries as a result of the collision. Her husband has suffered a loss of his wife's services, society, and companionship.

Cadet Hehman was a member of the Junior Reserve Officers' Training Corps ("JROTC") at the time of the incident. Cadet Hehman's activities in the slide for life exercise were controlled and supervised by the JROTC. The JROTC program is authorized by the provisions of 10 U.S.C. § 2031. JROTC is a cooperative effort by the United States and local school corporations to promote and instill qualities of leadership and discipline in young men and women in secondary educational institutions. By statute, the Secretary of the military department involved (Army, Navy, or Air Force) shall support JROTC by detailing retired officers under his jurisdiction to serve as administrators and instructors in JROTC; providing necessary text materials, equipment, and uniforms; and, establishing minimum acceptable standards for performance and achievement. By statute, retired officers serving as a administrators or instructors of JROTC are not considered to be on active duty or inactive duty training for any purpose.

Retired officers who serve as JROTC instructors are paid by the local school corporation. The school is then reimbursed for half of the salary by the United States. The JROTC unit to which Cadet Hehman was attached was established and administered by Indianapolis Public Schools ("IPS"). The JROTC unit in question was personally administered by Lieutenant Colonel Don Clark, United States Army (Retired). Clark has served as Director of the IPS JROTC unit since he retired from the United States Army in 1976. Clark is paid bi-weekly by IPS, and works out of his office at Arsenal Technical High School in Indianapolis. Colonel Clark oversees eight units of the JROTC program at eight different IPS high schools. Clark's formal title is "Director of Army Instruction for the Indianapolis Public Schools." His immediate supervisor in IPS is Dr. Highland, the director of secondary education for IPS. Colonel Clark is furnished a vehicle by the United States Army. The uniforms and materials for use in JROTC training are provided to the school corporations by the United States Army.

At the time of the incident in question, there were in effect official government regulations published in 32 Code of Federal Regulations Part 111, entitled "Reserve Officers' Training Corps Program for Secondary Educational Institutions." These regulations provide that the secondary educational institution that establishes the JROTC unit "is the employing agency"; that the Secretary of the branch of the services involved shall evaluate "annually the operation, administration, and effectiveness of the overall Junior ROTC programs"; and that the retired officer-instructors "are employees of the school and are responsible to school authorities for the conduct of the JROTC program." IPS retained the authority to hire, fire, assign, and reassign JROTC instructors.

II. *Summary Judgment Standards:*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Further, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

While these rules were formerly viewed with some hostility by the federal courts and were sparingly used in disposing of insufficient claims or defenses, *see, e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court has recently instructed the district courts to follow the mandatory aspects of Rule 56 and enter summary judgment where appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The *Celotex* Court wrote:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

The Seventh Circuit has noted and readily embraced the change in attitude towards Rule 56. For instance, in affirming an entry of summary judgment, one panel of the court wrote, "When it is plain that a trial could have but one outcome, summary judgment is properly granted to spare the parties and the court the time, the bother, the expense, the tedium, the pain, and the uncertainties of trial." *Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988).

Similarly, in *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988), another panel recently expounded on the proper application of Rule 56 in light of the Supreme Court's new directives. In *Collins,* the court first noted that "the Supreme Court [has] made clear that, contrary to the emphasis of some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances...." 844 F.2d at 475. After citing to the trilogy of Supreme Court summary judgment cases, the Seventh Circuit explained the change in attitude towards Rule 56 at length, writing:

> This language [from the summary judgment cases] indicates that a summary judgment motion is like a trial motion for a directed verdict and that 'genuine' allows some quantitative determination of the sufficiency of the evidence. The trial court still cannot resolve factual disputes that could go to a jury at trial, but weak factual claims can be weeded out through summary judgment motions. The existence of a triable issue is no longer sufficient to survive a motion for summary judgment. Instead, the triable issue must be evaluated in its factual context, which suggests that the test for summary judgment is whether sufficient evidence exists in the pre-trial record to allow the non-moving party to survive a motion for directed verdict.

*Collins,* 844 F.2d at 476 (citation omitted).

It is also clear that a properly supported motion for summary judgment "cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit." *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988). An unsupported assertion that a movant's affidavit should not be taken as true for purposes of summary judgment does nothing to create a genuine issue of material fact. *Id.* And, it is settled that Rule 56 requires the non-movant to come forth with *admissible* evidence in opposition to a properly supported motion for summary judgment. 10A C. Wright and A. Miller, *Federal Practice and Procedure,* § 2727 at 156 (1983). Hearsay evidence that does not qualify under any of the

hearsay exceptions may not be considered by the courts in ruling on a motion for summary judgment. *See, e.g., Martz v. Union Labor Life Insurance Co.*, 757 F.2d 135, 138 (7th Cir.1985); *Friedel v. City of Madison*, 832 F.2d 965 (7th Cir.1987). *Pfeil v. Rogers*, 757 F.2d 850, 860 (7th Cir.1985).

In line with the mandate of Rule 56, Rule 11 of the Local Rules for this Court provides that the moving party is to submit proposed findings of fact and conclusions of law, which the United States did in this case. Then, under Local Rule 11, the non-movant must submit a "concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." The Court, in determining the motion for summary judgment, "will assume that the facts as claimed by the moving party are admitted to exist without controversy, except as and to the extent that such facts are actually in good faith controverted in the 'statement of genuine issues' [required to be filed by the non-movant], as supported by the ... affidavits on file." Local Rule 11.

With these standards at hand, the Court will address the parties' submissions. It must initially be noted that while the McFeelys have had ample opportunity to do so, they have not filed their "statement of genuine issues" as required under Local Rule 11. Although the Court could thus merely rely on the formalities of Local Rule 11 to find for the defendant, the Court will nonetheless fully address the parties' submissions to demonstrate why plaintiffs cannot recover in this instance.

■ Moreover, the only evidentiary submission made by the plaintiffs is a deposition of Colonel Clark taken in a related case filed in the Marion County Circuit Court, a case in which the United States was not a party. Although plaintiffs have not demonstrated that this deposition should now be admitted under the prior testimony exception to the hearsay rule provided by Rule 804(b)(1) of the Federal Rules of Evidence, the Court will generously treat the testimony as admissible for purposes of ruling on the present motion.[1]

### III. *Conclusions of Law:*

After reviewing the undisputed facts, the Court now makes the following conclusions of law:

#### A. Jurisdiction and law to be applied:

The source of subject matter jurisdiction in this case is 28 U.S.C. § 1346(b). Because the acts or omissions causing the plaintiff's injury and the injury itself occurred in Indiana, the substantive law of Indiana is applied.

---

1. In general, evidence submitted for summary judgment purposes must be admissible at trial. Fed.R.Civ.Proc. 56(e). Some leeway is given at summary judgment because of the preliminary nature of the proceeding. *See, e.g., Reed v. Ford Motor Co.*, 679 F.Supp. 873 (S.D.Ind.1988) (Rule 56(e) does not require an unequivocal conclusion that the evidence will be admissible at trial as a condition precedent to its consideration at summary judgment).

Here, the deposition submitted by the plaintiffs was taken in a related state court action brought by the plaintiffs against Colonel Clark. Such testimony is clearly hearsay under Fed.R. Evid. 801. Under Fed.R.Evid. 804(b)(1), this deposition testimony may be admitted as an exception to the hearsay rule if the declarant is "unavailable" as a witness, and if "a predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." In this instance, there has been no showing by the plaintiffs that Colonel Clark is unavailable, nor have the plaintiffs come forth to demonstrate that Colonel Clark

qualifies as a "predecessor in interest" and that he had "similar motive to develop the testimony" as the United States would have had.

Although the language of Rule 804(b)(1) has not always been strictly construed by the courts, *see generally*, 4 *Weinstein's Evidence* ¶ 804(b)(1)[04] (1985); *Rule v. International Assoc. of Bridge Workers*, 568 F.2d 558, 569 (8th Cir.1977); *Dykes v. Raymark Industries*, 801 F.2d 810, 815–17 (6th Cir.1986); it is clear that this Court would be acting appropriately if it refused to consider the deposition submitted by the plaintiffs. However, given the apparent similarities of issues and parties in this case and the state litigation against Colonel Clark and the overriding goal of "fairness and efficiency," the Court will consider the deposition testimony in ruling on this motion. *Cf., Miwon, U.S.A., Inc. v. Crawford*, 629 F.Supp. 153, 155 n. 3 (S.D.N.Y. 1985) ("given this liberal construction [of 804(b)(1) ], the similarity of issues and parties ..., and the absence of any opposition by defendant, this Court finds these admissibility requirements to be satisfied").

**B. Are JROTC instructors "employees" for purposes of the Tort Claims Act?**

It is axiomatic that the United States may not be sued absent the express consent of Congress. *United States v. Mitchell*, 445 U.S. 535, 539, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Consent of the United States to be sued "cannot be implied but must be unequivocally expressed." *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Rhodes v. United States*, 760 F.2d 1180, 1184 (11th Cir.1985). The Federal Tort Claims Act is a limited waiver of the United States government's sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The Act permits the United States to be sued for the negligence of its "employees" acting in the scope of their employment under circumstances where the United States would be liable under applicable state law if it were a private person. 28 U.S.C. § 1346. "As a waiver of sovereign immunity, the FTCA must be strictly interpreted...." *Quilico v. Kaplan*, 749 F.2d 480, 483 (7th Cir.1984).

The issue in this case, then, is whether any of the individuals charged with negligence were federal employees as defined in the Federal Tort Claims Act. Specifically, the question is whether Junior Reserve Officer Training Corps' instructors are United States employees under the Act. The Act itself defines "employee" to include "officers or employees of any federal agency, members of the military or naval forces ... and persons acting on behalf of a federal agency in an official capacity...." 28 U.S.C. § 2671. In the case of a member of the armed services, "acting within the scope of employment" means "acting in line of duty." *Id.* And, "federal agency" includes the executive branch, the military departments, among others, but does not include "any contractor with the United States." *Id.*

Although general substantive issues under the Act are decided by applying applicable state law, the question of whether an individual is an "employee" under the Act, and thus whether the Congress has expressly waived sovereign immunity in the given instance, is a question of federal law because Congress has attempted to specifically delineate the scope of its waiver of immunity. *Quilico v. Kaplan*, 749 F.2d 480, 483 (7th Cir.1984); *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973); *Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir.1985). The burden always rests with the plaintiff to prove under federal law that the negligent person was an employee of the United States. *Duncan v. United States*, 562 F.Supp. 96, 99 (E.D.La.1983).

The basic test for whether an individual is an employee under the Act is whether "the government is authorized to direct or control the detailed performance of the defendants' work." *Kaplan*, 749 F.2d at 482 (7th Cir.1984); *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed. 2d 121 (1973); *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). The focus is thus on whether the United States maintains "sufficient control over the daily operations" of the alleged employees. *Brooks v. A.R. & S. Enterprises*, 622 F.2d 8, 11 (1st Cir. 1980). Supervision of the "day-to-day operations of the contractor, including control of the detailed, physical performance," is a prerequisite to finding a government employer-employee relationship under the Act. *Schwab v. United States*, 649 F.Supp. 1319, 1325 (M.D.Fla.1986).

The precise question presented today has been addressed previously by four different federal judges, with each of them concluding as a matter of law that a JROTC instructor is *not* an employee under the Tort Claims Act. *Cavazos v. United States*, 776 F.2d 1263 (5th Cir.1985) (affirming district court's entry of summary judgment and dismissal of FTCA claim involving JROTC instructor). In *Cavazos*, a JROTC cadet who was injured during a weekend drill session brought suit against the United States. The cadet alleged that the negligence of certain JROTC instructors, all of them retired military men, caused his injuries. The district court granted summary judgment for the United States, and appeal was taken. *Id.* at 1263.

On appeal, the Fifth Circuit framed the narrow issue for review, writing, "The sole question presented asks whether the JROTC instructors were employees of the federal government, for whose negligence the United States may be held liable, or employees of the school district as an independent contractor, in which case the government could not be held accountable." 776 F.2d at 1264. The Fifth Circuit carefully analyzed the statutes and regulations providing for the creation of JROTC units and concluded that the United States simply did not have sufficient authority to control the day-to-day operations of JROTC units to categorize the instructors as FTCA "employees". *Id.* ("the evidence ... establishes beyond peradventure that under the *Logue–Orleans* 'daily-detailed-control' test, the ... JROTC instructors were not federal employees").

First, the court held that the instructors, who were retired military members (as required by federal law), "were not 'members of the military or naval forces of the United States'" under the Act. *Id.* at 1264. Instead, they were "retired military personnel; they were civilians." *Id.* The court relied principally on the Act and the federal regulations to demonstrate this, writing:

> Any doubt that might be harbored as to their status [as civilians] evanesces in light of the language of 10 U.S.C. § 2031(d)(2): 'Notwithstanding any other provision of law, such a retired member [of the military serving as a certified JROTC instructor] is *not,* while ... employed [as a JROTC instructor], considered to be on active duty or inactive duty for *any* purpose.' *See also* 32 CFR § 536.3(1) (defining military personnel for purposes of the FTCA and 32 C.F.R. § 536.29 as 'members of the Army on active duty for training, or inactive duty training').

*Cavazos,* 776 F.2d at 1265 (first emphasis in original; second emphasis added).

Next, the *Cavazos* court ruled that the JROTC instructors were not civilian federal employees because they were not under the "daily, detailed control and supervision of the Army." *Id.* Under Army Regulation 145–2 § 6–38(1), the instructors were "responsible to school officials for conducting the program." 776 F.2d at 1265. The Fifth Circuit simply found that whatever minimal involvement the Army had "in certifying the instructors, providing manuals and uniforms, paying one-half the minimum salary ..., providing broad outlines and goals, and conducting an annual inspection ... was insufficient to satisfy the *Logue–Orleans* test." *Id.* at 1266.

■ So it is in this case. Plaintiffs are simply unable to show that *Cavazos* is inapplicable here. The same statutory and regulatory language that governed the Fifth Circuit's well-reasoned decision is of course present here.[2] These federal statutes and language effectively limit the authority of the United States government to oversee and control the high school JROTC programs, thus mandating a finding here that the United States did not have sufficient authority over the day-to-day activities of the JROTC instructors at IPS to classify them as federal employees. The fact that a JROTC cadet was injured in *Cavazos,* whereas a third person was injured here, is, of course, of no import in the determination of whether JROTC instructors are federal employees under the Act. The language of the statutes and regulations is clear and unequivocal, and cannot be ignored by this Court. The Court thus finds as a matter of law that the JROTC instructors whose negligence is alleged to have caused plaintiffs' injuries are not employees of the federal government for purposes of the Tort Claims Act.

2. This Court is duty bound to "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [it] can." *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987). The Seventh Circuit has expressed concern when the district courts it governs fail to adopt authoritative opinions of the other courts of appeals. "Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight." *Richards v. Local 134, International Brotherhood of Electrical Workers,* 790 F.2d 633, 636 (7th Cir.1986).

The Supreme Court's closing lines in an early case denying relief under the Act on similar grounds are worthy of quotation here:

In so holding we are not unmindful that this doubtless leaves those who suffered from this accident without effective legal redress for their losses. It is nevertheless our duty to take the law as we find it, remitting those aggrieved to whatever requitement may be deemed appropriate by Congress, which ... has shown itself not impervious to the moral demands of such distressing situations.

*Maryland v. United States,* 381 U.S. 41, 53, 85 S.Ct. 1293, 1300, 14 L.Ed.2d 205 (1965).

### C. Applicability of Indiana's Recreational Use Statute:

Plaintiffs aver generally in their complaint that the United States was responsible for the safety of visitors at the Camp Atterbury Military Reservation. To the extent that this allegation attempts to state a claim for relief on the basis of Indiana premises liability law, the claim fails as a matter of law.

First, the plaintiffs have failed to offer *any* evidence that the United States owned or controlled the premises. To the contrary, the deposition they submit undisputably establishes that the Indiana National Guard, not the United States, controls the premises in question. In premises liability actions, any duties imposed on the owner or occupier are based on the right to control the premises. *See, e.g., Martin v. Shea,* 463 N.E.2d 1092, 1094 (Ind.1984). Because the right to control has not been shown here, there is no basis to impose any duty on the United States to care for the plaintiffs.

And, even if the United States did own the land, the cause of action would be barred by Indiana's recreational use statute. *Ind.Code* § 14-2-6-3. This statute provides that any non-invitee going upon the land of another without the payment of monetary consideration cannot recover from the landowner absent malicious or illegal acts on the part of the owner. Be-cause plaintiffs did not pay any consideration to come on the premises of Camp Atterbury, they are barred from recovering from the landowner.

### IV. *Conclusion:*

Thus, there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law. This court is without jurisdiction to entertain an action against the United States where Congress has not waived sovereign immunity. Because JROTC instructors are not federal employees under the Act, the limited waiver of the Federal Tort Claims Act does not apply. Moreover, the plaintiffs fail, as a matter of law, to show any basis for relief based on Indiana premises liability law.

Accordingly, JUDGMENT IS ENTERED FOR THE DEFENDANT AND AGAINST THE PLAINTIFF.