Willie B. ANDERSON,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant–Appellee.

No. 88–1049.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1988.
Decided Feb. 14, 1989.

Janet F. Gerske, Chicago, Ill., for plaintiff-appellant.

Linda E. Tucker, U.S. Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Willie Anderson seeks review of a final decision of the Secretary of Health and Human Services (the "Secretary") denying his applications for disability insurance benefits and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 423 and 416(i). We affirm the district court's approval of the Secretary's decision.

## Background

Anderson filed applications for SSI and disability insurance benefits on October 9, 1985. The applications alleged that as of

September 1980 he became incapable to pursue his usual line of employment resulting from a heart condition, diabetes, swelling of the legs, headaches, nosebleeds and poor vision.[1] The Secretary denied the applications initially and on reconsideration. Counsel was appointed for Anderson and a hearing was held before an Administrative Law Judge ("ALJ") on June 16, 1986. Anderson testified at the hearing that he was physically unable to return to his former work as a laundry sorter because it required too much walking, standing and lifting of heavy weights. He also complained of sore hands and constant pain in his legs and chest. Regarding his functional capacity, he claimed an inability to stand for more than five or six minutes, to sit for more than five minutes, to lift more than four pounds and to walk more than half a block.

Anderson was born July 15, 1937, and has an eighth grade education.[2] He is five feet eleven inches tall and weighs approximately 275 pounds. Anderson was most recently employed from approximately 1979 through 1983 as a laundry sorter, a job that required him to stand all day and lift bundles of clothes weighing over 100 pounds. Anderson has not worked since late 1983, when the laundry went out of business.

The medical record reveals that Anderson had regular check-ups from January 1982 to May 1986 at the Fantus Health Center, located in Cook County Hospital, Chicago, Illinois ("Fantus"). Medical progress notes prepared by examining physicians after each check-up reflect that Anderson was consistently treated for hypertension, diabetes and obesity during this period. Some of the medical notes made after examination and/or treatment refer to but do not specifically diagnose congestive heart failure and edema, and also suggest that Anderson was suffering from cardiomegaly and tachycardia on several

---

1. It is undisputed that Anderson met the earnings eligibility requirement for disability benefits from September 1980 through December 31, 1985.

2. *See infra* note 8.

isolated occasions.[3] Anderson contends that these references provide substantial evidence that he is disabled.

On June 24, 1985, Anderson was examined by Dr. U. Gowda, a physician retained for consultation by the State of Illinois.[4] Anderson complained to Dr. Gowda of a six month history of sharp chest pain with an onset after physicial exertion. Upon examination Dr. Gowda specifically noted a "massively obese" man "in no acute distress." Further, Dr. Gowda noted his uncorrected visual acuity in both eyes at 20/25. Examination of the chest and heart sounds were normal, although Dr. Gowda did observe a grade I/VI ejection systolic heart murmur. There was no enlargement of the abdominal organs and no edema (fluid build-up) in the lower extremities. The musculoskeletal system was entirely normal with no complaints of pain with movement. Dr. Gowda's "final impression" states that Anderson's hypertension was uncontrolled by his prescribed medication "but there are no clinical features suggestive of congestive heart failure."

At the request of the Illinois Bureau of Disability Adjudication Services, Dr. Mila Bacalla, an internist, performed another consultative examination of Anderson on December 9, 1985. At that time plaintiff-appellant Anderson complained of constant leg pain and sharp chest pain for the previous five years, generally brought on by exertion. Examination showed uncorrected visual acuity of 20/40 on the right and 20/30 on the left, with retinopathy (a noninflammatory disease of the retina).[5] There were no deformities or edema in the upper and lower extremities, and Anderson displayed full range of motion in those joints.

Dr. Bacalla found "no evidence of any congestive heart failure at this time," and a "murmur suggestive of aortic stenosis" (a narrowing of the trunk of the arterial system).[6]

Anderson also underwent a stress test in January 1986. The test revealed coronary artery disease and sinus tachycardia but was negative for ischemia (deficiency of blood in a part due to obstruction of a blood vessel).[7]

After reviewing the medical evidence and Anderson's hearing testimony, the ALJ found that Anderson could not return to his former work as a laundry sorter because he could no longer perform the heavy lifting required in that job. However, he went on to state that Anderson did retain the residual functional capacity to perform a full range of light work. The ALJ then applied the Secretary's Medical-Vocational Guidelines (the "Grid"), 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.17, which mandated a finding that Anderson was not disabled in light of his age (forty-eight), education (eighth grade), previous work experience (unskilled) and residual functional capacity (light work).[8] The Appeals Council denied Anderson's request for review of the ALJ's decision. The district court affirmed.

Our task is to determine whether the Secretary's findings are supported in the record with substantial evidence, 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account whatever in the record fairly detracts from its weight." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

---

3. Edema is a fluid build-up in the intercellular tissue spaces of the body, *Dorland's Illustrated Medical Dictionary* 599 (26th ed. 1981). Cardiomegaly is an enlarged heart, *Id.* at 222. Tachycardia is a rapid heart beat, *Id.* at 1307.

4. Dr. Gowda's specialty, if he has one, is not clear from the record.

5. *Dorland's Illustrated Medical Dictionary* at 1148.

6. *Id.* at 1249.

7. *Id.* at 681.

8. In fact, Anderson turned forty-nine three days prior to the date the ALJ rendered his decision. In addition, Anderson testified at the hearing that he had a fifth grade education, as contrasted with his assertion, in the initial disability report he signed and filed, that he completed the eighth grade. (Tr. 92) However, Anderson's age and educational classifications on the Grid would have been the same even if the ALJ had found that he completed only five grades and was forty-nine years old.

Anderson raises two issues on appeal. Initially, he claims that the ALJ failed to discuss significant evidence in his medical records that he suffers from congestive heart failure, which requires a finding that he is disabled at Step 3 of the five-step sequential procedure for evaluation of disability claims.[9] Further, he argues that because of his physical and medical problems he is unable to perform a full range of light work and should have been declared disabled at Step 5 of the Secretary's regulations.

### Congestive Heart Failure

A claimant is considered to be disabled at Step 3 of the five-step disability determination procedure upon proof of one of the impairments listed in Appendix 1 to the Secretary's regulations, 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings"). Anderson contends that he has congestive heart failure ("CHF"), which appears at section 4.02 of the Listings, and requires a showing of persistent CHF manifested by evidence of vascular congestion such as hepatomegaly or edema, either peripheral or pulmonary.[10]

The ALJ reviewed the evidence presented in the patient's medical history from the Fantus Health Center, and in his decision noted the various blood pressure readings, the results of an electrocardiogram and heart examinations, blood sugar counts as well as Anderson's severe obesity. He made no mention of any evidence of congestive heart failure. He also discussed the results of the consultative medical examinations performed by Dr. Gowda and Dr. Bacalla. He ultimately stated:

"A perusal of all the medical evidence in the record reveals no impairment or impairments either singularly or in combination that meets or equals any of the listed impairments and more particularly Section 4 (cardiovascular system)."

Anderson argues that the ALJ's discussion ignores evidence of congestive heart failure. He directs our attention to a number of references to CHF in progress notes from the Fantus Health Center dating from 1982 through 1986. We have repeatedly held that a written evaluation of every piece of testimony and submitted evidence is not required. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir.1985), quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir.1984). Instead, we are interested in knowing that the Secretary has considered and discussed "the important evidence," *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985), including "all medical evidence that is credible, supported by clinical findings and relevant to the question at hand...." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984). Because the evidence Anderson relies upon is not supported with clinical findings in the record we conclude that the ALJ was not obliged to discuss it in his written decision.

None of the references to CHF in the Fantus medical history are supported by evidence of vascular congestion, as section 402(A) of the Listings requires. There is no evidence at all of liver enlargement (hepatomegaly). Indeed, Fantus notes from September 1985 and January 1986 specifically state "no hepatomegaly," and Dr. Gowda found no enlargement of any abdominal organ. In addition, Anderson

---

9. Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe?" (3) Does the impairment meet or exceed one of the impairments listed at Appendix 1 of the Secretary's Regulations? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy in view of the claimant's age, education, past work experience and residual functional capacity? An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985), citing 20 C.F.R. § 404.1520.

10. Hepatomegaly is an enlargement of the liver, *Dorland's Illustrated Medical Dictionary* 599 (26th Ed.1981). Pulmonary edema refers to the accumulation of fluid in the lungs, peripheral edema to the accumulation of fluid in the extremities. *Id.* at 421 and 1094.

relies on only two references to edema in his voluminous Fantus records. Not only are those references ambiguous, they are also overwhelmed by negative findings. References to pedal edema appear in notes from April 1985 (Tr. 126) and August 1985 (Tr. 125). In the April 1985 note the term "pedal edema" is preceded by a circle with a plus sign inside. In the August 1985 note, "pedal edema" is preceded by a circle with a line through it. We are unable to decipher the exact meaning of some of those symbols, and thus are unable to determine whether they actually are supportive of Anderson's position. Even if we were to interpret the references in Anderson's favor, there is substantial evidence in the medical record that he was afflicted with neither pulmonary nor peripheral edema. Progress notes from February 1985 and May 1986 specifically disclaim the existence of edema. Moreover, Dr. Gowda (in June 1985) and Dr. Bacalla (in December 1985) found no edema. In addition, most of the Fantus progress notes state that Anderson's lungs were clear, suggesting the lack of any pulmonary edema.

We think it is significant, in addition, that none of the Fantus notes offer a definitive much less a specific statement that Anderson suffers from CHF. The abbreviation "CHF" appears on some of the notes, but the references are neither labeled as part of a diagnosis nor stated as a clinical finding. Rather, the abbreviation appears most frequently at the top of the notes, as part of an unlabeled listing of medical conditions. We are unable to determine whether these ambiguous references to CHF refer to Anderson's complaints, the doctor's pre-examination suspicions based on those complaints, or post-examination diagnoses.

It would have aided our review of this case had the ALJ discussed the references to CHF in the Fantus medical history. However, in view of the ambiguity of the evidence Anderson relies upon and the lack of clinical support for his position, we refuse to reverse or remand the ALJ's decision. Our conclusion finds support in the substantial, unambiguous medical evidence contained in the reports of Dr. Gowda and Dr. Bacalla, both of whom affirmatively stated that Anderson did not suffer from CHF.

Nonetheless, Anderson contends that he has established CHF by other evidence. He refers to findings of cardiomegaly (an enlarged heart), systolic ejection heart murmur and tachycardia (rapid heart beat). The argument is unconvincing as there is no medical evidence in this record to suggest that those findings constitute evidence of vascular congestion or CHF sufficient to satisfy section 4.02 of the Secretary's Listings. Although cardiomegaly and tachycardia may be considered as supportive evidence of CHF in conjunction with more definitive medical problems, they may also be attributable to a variety of other medical conditions unrelated to CHF. *The Merck Manual* 363 and 443. Neither this court nor the ALJ could assume that simple diagnoses of either cardiomegaly or tachycardia alone provide probative evidence of CHF. The heart murmur referenced by Dr. Bacalla and Dr. Gowda also is not sufficient to overcome their ultimate conclusion that Anderson exhibited no evidence of congestive heart failure.

### Residual Functional Capacity

■ The ALJ accepted Anderson's testimony that his former job as a laundry sorter required him to lift and carry objects weighing over fifty pounds, and concluded at Step 4 that Anderson was unable to return to such demanding work. The ALJ went on, however, to determine that Anderson does retain the residual functional capacity to perform the full range of light work. The ALJ then proceeded at Step 5 to apply Rule 202.17, Table No. 2, of the Secretary's Medical–Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2 (the "Grid"), which directed a finding that Anderson is not disabled. Anderson urges that there is no substantial evidence to support the application of Rule 202.17 in this case.[11]

11. While the ALJ found that Anderson was not

able to return to his specific former job as a

■ One of the prerequisites to application of Rule 202.17 is that the claimant be able to perform the full range of light work.

"Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

20 C.F.R. § 404.1567(b).

The only record evidence that Anderson could not perform the full range of light work is his own self-serving testimony that he can lift only four pounds, stand for only five to six minutes before he needs to sit and can walk only half a block. Anderson contends that the ALJ never rejected this testimony, but that is not the case. The ALJ observed that Anderson's main problems are hypertension and obesity, the latter of which has caused only "minor musculo-skeletal disfunction." He went on to note that Anderson does all of his own personal grooming, uses public transportation (he took a bus to the hearing), is able to reach and bend without difficulty and has only minor cardiac problems. The ALJ ultimately concluded, based on Anderson's medical history as well as his medical examinations, that his complaints of pain and discomfort "are exaggerated." Our reading of the ALJ's comments on the evidence convinces us that that credibility determination applied not only to Anderson's complaints of pain but also to his complaints of extensive functional limitation.

After all, as we have said, no evidence other than Anderson's own self-supporting testimony lends credence to his claim that he is unable to engage in light work. While on the other hand there is substantial evidence in the record to the contrary. Stress tests conducted in December 1985 and January 1986 show a limited tolerance for exercise but were negative for ischemic heart disease. The evidence of CHF is far from compelling and does not even suggest severe functional disability. Not one of the physicians who examined Anderson found that he was unable to perform light work. In fact, one of the doctors from Fantus Health Clinic, when asked to rate the severity of Anderson's disability (the available categories were "mild," "moderate," and "severe") described it as "mild." The same physician classified Anderson's functional capacity under Class I of the American Heart Association's heart disease classification system, which applies to patients "with cardiac disease but *no* resulting limitation of physical activity." (emphasis added). All this is in addition to the only two residual functional capacity assessments in the record, both of which conclude that Anderson is capable of performing the full range of light work.[12] Even if we were to assume that Anderson is unable to perform the full range of light work, the evidence supports the conclusion that he can perform sedentary work. Assuming that all other vocational factors are properly applied, Anderson would still be considered "not disabled" under Rule 201.18, Table No. 1, 20 C.F.R., Pt. 404, Subpt. P, App. 2.

laundry sorter as Anderson described it (because it required lifting and carrying of very heavy objects), he concluded that Anderson could return to laundry sorting as the job is defined in the Dictionary of Occupational Titles ("DOT"). Under DOT § 361.687–014, laundry sorting is light work. If there is substantial evidence to support the ALJ's finding that Anderson could perform the full range of light work, the evidence must necessarily be sufficient to establish that he can perform laundry sorting as that job is typically found in the national economy. There is no merit to Anderson's contention that the DOT section relied upon by the ALJ does not accurately describe Anderson's past job. The DOT is a recognized source of vocational evidence. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). That the demands of Anderson's own past work exceeded the demands of that work as generally found in the economy is not determinative. *See Orlando v. Heckler,* 776 F.2d 209, 215 (7th Cir.1985).

12. The ALJ agreed at the hearing to give "minimal weight" to the residual functional capacity assessments because the physician who completed them did not personally examine Anderson. The assessments are not mentioned in the ALJ's hearing decision.

■ Anderson challenges application of Rule 202.17 on two other grounds, neither of which need detain us. First, he contends that Rule 202.17, standing alone, does not provide substantial evidence of nondisability because he suffers from certain nonexertional limitations (specifically, pain, blurred vision and inability to hold small objects). Because nonexertional limitations are not reflected in Grid determinations, if such limitations are proven the Grid alone will not suffice to establish substantial evidence of nondisability. *See* section 200.00(e)(1), 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, the ALJ found Anderson's complaints of pain to be "exaggerated," and that credibility determination must stand unless "patently wrong in view of the cold record." *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986). Anderson denied any chest pain during an examination at the Fantus Health Center just six weeks before the administrative hearing, and the Fantus progress notes indicate no complaints of pain during a substantial number of his routine clinic visits. Furthermore, the complaints he did register lack credibility as the ALJ found and are inconsistent (for example, he denied any chest pain in August 1985 but in December 1985 claimed to have had chest pain for the previous five years). We refuse to hold that the ALJ's credibility determination is patently wrong. As to complaints of blurred vision, the evidence supports the ALJ's finding that Anderson suffers only from "minor" visual impairment. There is no record evidence to suggest that his visual acuity is so limited that it will affect his ability to perform the full range of light work. Finally, the medical record directly refutes Anderson's testimony that he cannot hold small objects. Both Dr. Bacalla and Dr. Gowda found no impairment of Anderson's ability to grip and perform fine manipulations with both hands.

■ Anderson also contends that the ALJ incorrectly categorized him for purposes of Rule 202.17 as a "younger individual." Persons under age 50 are considered "younger individuals" for purposes of applying the Grid. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(h); 20 C.F.R. § 404.1563(b). Anderson was born July 15, 1937, making him forty-nine years and three days old on the day the ALJ issued his decision. He was therefore properly categorized as a "younger individual." Even if Anderson was considered to be a person "closely approaching advanced age," application of Rule 202.10 would likewise have mandated a finding of not disabled.

We are also asked to issue an order that the Secretary reopen Anderson's application for disability insurance benefits purportedly filed in 1984 and denied by the Secretary in February 1985. Neither the application nor denial appear in the administrative record. Because the evidence supporting Anderson's 1984 application is identical to the evidence supporting the October 1985 applications at issue here, and because the ALJ denied benefits based on all of that evidence, we refuse to direct that the 1984 application be reopened.

### New Evidence

■ Anderson filed his notice of appeal in this court on January 7, 1988. On October 17, 1988, approximately two weeks prior to oral argument, he filed a motion to remand "for consideration of new and material evidence." He advances as new evidence a psychological evaluation conducted on September 9, 1988, which described Anderson as mildly retarded. Remand for consideration of additional evidence is appropriate only upon a showing that the evidence is new and material to the claimant's condition during the relevant time period encompassed by the disability application under review, and there is good cause for not introducing the evidence during the administrative proceedings. 42 U.S.C. § 405(g); *Sears v. Bowen,* 840 F.2d 394 (7th Cir.1988).

Portions of the procedural history in the case shed some light on the new evidence issue. Anderson's counsel accepted her appointment on May 14, 1986. It appears, however, that she did not receive notice of the administrative hearing until the day that it occurred, and had an opportunity to observe the file for the first time forty-five

minutes before commencement of the hearing. Nonetheless, the hearing did go forward on June 16, 1986. Anderson did not testify to psychological disfunction at the hearing and no medical records were presented supporting any such deficiency. At the request of Anderson's counsel, the ALJ allowed counsel thirty days from the date of the hearing to support the record with any additional medical evidence. No additional evidence was submitted. The ALJ issued his decision on July 18, 1986. Anderson requested that the ALJ's decision be reviewed by the Appeals Council, and his attorney asked for and received two thirty-day extensions of time to submit additional medical evidence to the Appeals Council in support of Anderson's claim. On November 4, 1986, Anderson's attorney informed the Appeals Council that she would not submit any additional evidence. The Appeals Council denied review of the ALJ's decision on January 13, 1987, and Anderson filed his appeal in the district court in February or March of 1987. At approximately the same time (on March 10, 1987) Anderson filed a new application for supplemental security income, which was scheduled for an administrative hearing on November 3, 1988. In preparation for the hearing on the new SSI claim, Anderson's attorney recommended that Anderson undergo psychological testing. In the Motion to Remand she filed with this court, counsel explained why she did not refer Anderson for psychological testing prior to 1988:

> "Psychological testing had not been done previously because the impairments alleged by Mr. Anderson were physical. However, Mr. Anderson's continuing assertions to undersigned counsel that he did not feel well most of the time were not fully explained by the current medical records, thus prompting the referral for psychological testing. The testing was performed on September 6, 1988."

The sequence of events in this record do not establish good cause for Anderson's failure to introduce any psychological assessments during the administrative proceedings on his 1985 applications. Anderson complained at the June 16, 1986, administrative hearing of constant pain in his legs and chest, and described rather severe functional limitations. Yet the ALJ found that the medical records do not substantiate those subjective and functional complaints. We are not persuaded by counsel's suggestion that the discrepancy between Anderson's complaints and the medical evidence did not manifest itself until completion of the administrative process on the 1985 applications. Counsel had over seven months to supplement the record between the conclusion of the administrative hearing and the Appeals Council's decision, but failed to do so. Perhaps Anderson's complaints in 1988 that "he did not feel well most of the time" were qualitatively or quantitatively different than complaints he made before the ALJ in 1986. But if that is the case we can only assume that his condition deteriorated after the June 1986 hearing. Because our review is limited to determining whether there is substantial evidence to support the ALJ's finding that Anderson was not disabled from September 1980 through the date of the hearing, his post-hearing condition is not material to the period of disability at issue on this appeal. On this record, it appears that Anderson's attorney discovered, in early 1988, a new avenue of proof only after her client's 1985 applications were denied at every stage of the administrative process. Where, as here, the reasons for pursuing additional evidence are apparent while the case is still subject to administrative review, and there is no impediment to obtaining the evidence, no good cause has been demonstrated for failing to bring the evidence to the Secretary's attention.

In light of the above we need not consider whether Anderson's psychological assessment is new or material evidence. We do note, however, that Anderson has not identified, and we have not found, any evidence in the administrative record indicating emotional or intellectual disfunction at the time of or prior to the 1986 hearing. The ALJ specifically stated that "the claimant has no observable emotional disfunction from all the medical evidence in the

record, the testimony taken and my personal observation of him during the hearing." (Tr. 22). The psychological assessment may of course be pertinent to Anderson's still pending SSI claim. Moreover, the Secretary may on a showing of good cause and in his discretion reopen denial of the 1985 disability insurance and SSI applications. 20 C.F.R. §§ 404.987–.989. We express no opinion regarding the propriety of reopening the 1985 applications.

AFFIRMED.