920 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles G. ANGEL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-5262.
 United States Court of Appeals, Sixth Circuit.
 Dec. 14, 1990.
As Amended Jan. 25, 1991.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Charles G. Angel appeals from the district court's order affirming the final decision of the Secretary of Health and Human Services denying him disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Secs. 416(i), 423. The Secretary's determination that Angel did not suffer from a listed mental impairment pursuant to 20 C.F.R. Pt. 404, Subpt.P, App. 1, Sec. 12.05 (1990) (Mental Retardation and Autism) was not supported by substantial evidence. Therefore, we REMAND this case to the district court for entry of an order directing the Secretary to award Angel disability benefits from the unadjudicated period beginning May 23, 1984.
 
 FACTS
 
 2
 Angel was born on May 21, 1937 and was fifty-one years old at the time of the relevant hearing decision on June 21, 1988. He had an eighth grade education and a work history consisting of cattle farming since the age of twelve. He first filed an application for benefits on September 28, 1981, alleging an onset of disability of February 2, 1981 due to a back injury, stomach ulcer, arthritis and high blood pressure. A second, similar application was filed on January 20, 1983, and alleged an onset of disability of November 18, 1982. Both applications were denied, the last one on May 23, 1984. Neither application was appealed.
 
 
 3
 Angel filed his third application for benefits on January 13, 1986, following re-injury to his existing back condition which occurred while he was attempting to castrate hogs. His insured status expired on March 31, 1986. In his decision on Angel's 1986 application, the administrative law judge (ALJ) denied the claim and specifically refused to reopen Angel's prior applications. In 1987, Angel petitioned the Appeals Council for review of the ALJ's decision, claiming he suffered from a mental as well as a physical impairment. The Appeals Council remanded the case for a supplemental hearing to include a medical assessment from Angel's treating physicians. Angel was physically and emotionally unable to attend the second hearing. The ALJ then issued a second decision in 1988 finding Angel not disabled. On November 8, 1989, the district court affirmed the ALJ's decision.
 
 
 4
 Claimant's past relevant work experience was as a self-employed farmer on his 100-acre farm located next to his father's farm, where he raised hogs, cattle, strawberries, and corn. The 100-acre farm grossed approximately $1,600 to $1,700 net income per year. Angel testified that he did most of his "mechanical work, other than machine work" and did his own veterinary work except for "blood tests, things of that nature." Angel also offered suggestions to his son concerning the daily operations of the farm, such as "what feed to buy and what medicine to give." Angel sold all his hogs and cattle in 1981, the year he was first injured, for approximately $10,000. On his 1981 application for benefits, claimant stated that he earned money "buying land and making improvements on it," and on his 1986 application for benefits he stated that he ran a "one man farm operation." However, Angel later submitted an affidavit in which he indicated that he did little independent work on the farm because his eighty-year old father directed all his activities.
 
 
 5
 The record contains conflicting evidence regarding Angel's mental capacity. Angel was 15 years old when he completed the eighth grade and dropped out of school. At that time, he tested at the educational level of a 10-year-old in the area of paragraph and word meaning, and at the level of an 11-year-old in the area of language usage. A psychological consultative examination performed by William R. Boyd, Jr. on August 31, 1987 found Angel to be "marginally literate," and mildly mentally retarded. He received a verbal IQ score of 64, performance IQ of 58, and full scale IQ score of 57.[1] Boyd suggested that Angel's low scores placed him in the brain damaged range for perceptual motor functioning, but that further evaluation would be needed to substantiate a diagnosis of organic brain dysfunction. Boyd observed that the claimant was socially immature and emotionally fragile, and concluded that he would experience difficulty following work-related instructions, even under supervision.
 
 
 6
 The ALJ questioned the results of the psychological examination based on his memory and recollection of a hearing held more than five and a half years earlier, in July 1982, on claimant's first application for benefits. The ALJ therefore called in Medical Advisor (M.A.) Stanley Speal, Ph.D., to testify. Speal opined that the psychological testing results were wholly inconsistent with the reports of work activity which claimant had previously performed, and with the writing and vocabulary used in completing various Social Security forms. Based on Speal's testimony, the ALJ concluded that Angel retained the ability to engage in a full range of sedentary work and was therefore not disabled.
 
 
 7
 A. Secretary's finding of no mental impairment.
 
 
 8
 We find that the Secretary's determination that claimant did not suffer from a listed mental impairment pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.05 (1990), prior to the expiration of his insured status was not based on substantial evidence in the record as required by Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Although we recognize that in reviewing a case for substantial evidence the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984), in this case the evidence introduced by the government to rebut the evidence of mental impairment submitted by claimant was entirely inadequate to support the ALJ's decision.
 
 
 9
 (i) Consistency between test results and work experience.
 
 
 10
 Appellee first contests Boyd's psychological evaluation results based on Dr. Speal's testimony that the results were inconsistent with Angel's past work experience of managing his own farm, buying and selling stock, keeping records, and acting as a veterinarian. However, Dr. Speal admitted that the ability to buy and sell farm animals was only inconsistent with the IQ submitted "[i]f he had to manage money and buy and sell and do the negotiations and record keeping himself." Having reviewed the record, we conclude that there is simply no evidence that claimant was involved in the sort of activity which required him to assume responsibility for any type of buying, selling, or negotiating. In fact, Angel specifically stated in an affidavit submitted after the hearing that he never personally bought or sold any cattle or hogs and that his wife kept all the records because he is unable to add large numbers.[2] Although an M.A.'s testimony that a claimant's IQ scores are inconsistent with academic and job success may constitute competent evidence to contradict an IQ result reported by an examining psychologist, McDonald v. Secretary of Health and Human Services, No. 85-3322 (6th Cir. Feb. 25, 1986), the testimony will be considered adequate only if the record indeed supports a finding that the M.A.'s determination of academic or job success is reasonable.
 
 
 11
 Appellee nevertheless contends that Angel's affidavit statements were merely self-serving and, because inconsistent with earlier statements, were properly disregarded by the administrative law judge. See Anderson v. Bowen, 868 F.2d 921, 926 (7th Cir.1989). We disagree that the statements contained in the affidavit were inconsistent with earlier statements. The ALJ's reliance on Angel's statements in two disability reports concerning a "one man farming operation" and "buying and improving land" must be viewed in the context of other statements made by Angel. In his 1981 vocational application, Angel stated that in his job he did not use technical knowledge or skills, did not write or complete reports or perform similar duties, and did not have supervisory responsibilities. In his 1986 vocational report, Angel again reported the same lack of technical skills or knowledge, and the absence of writing requirements or supervisory responsibilities. Along the same lines, in his 1983 disability and vocational reports, claimant emphasized that his job required much physical activity, with no mention of other skills. Thus, there is no substantial evidence in the record which supports the underlying premise of Dr. Speal's opinion that Angel was involved in a sophisticated farming operation.
 
 
 12
 Appellee also contests Boyd's psychological evaluation results because they fail to contain a discussion of whether or not the IQ scores are valid and consistent with Angel's developmental history and degree of functional restrictions, pursuant to the listing Sec. 12.00(D) governing documentation of a mental disorder. We disagree. Boyd's failure to discuss the progressive aspect of Angel's mental impairment is explained by the fact that Angel had no history of treatment upon which Boyd could rely in making such an assessment. Moreover, Boyd addressed the issue of whether Angel's functional restrictions mirror his IQ in stating that "he is unable to perform any basic household tasks, and simply sits and lays around all day," and by otherwise noting limitations on his daily activities.
 
 
 13
 (ii) Consistency between test results and disability reports.
 
 
 14
 Appellee next contests Boyd's psychological evaluation results on the basis of Dr. Speal's testimony that the results were inconsistent with the writing, wording, and grammar used in the various disability reports. Dr. Speal's conclusion that Angel ran a sophisticated farming operation was inextricably connected with his conjecture that Angel had filled out the various disability forms.[3] However, no evidence was introduced at the hearing to establish that Angel had filled out his own disability forms. Instead, the record reveals that Dr. Speal and the ALJ improperly surmised that claimant wrote the reports by comparing the writing with the signature and the color of ink used. Angel, however, stated in his affidavit that he never filled out any of the forms, and was unable to even read the writing on at least one form.
 
 
 15
 B. Application of Res Judicata to Prior Applications
 
 
 16
 Angel argues that the ALJ impliedly reopened his 1981 and 1983 applications for benefits when the ALJ expressed skepticism of the IQ test results based on his recollection of the hearing he held on Angel's first application. We are unconvinced by this argument. The ALJ's only purpose in recollecting the first hearing was to call in question the validity of the IQ test results, an issue of central relevance to the third hearing. Likewise, the ALJ properly relied on the prior application forms as relevant evidence of whether Angel's work history was commensurate with his mental deficiency. The ALJ did not rely on the prior application forms, however, in determining whether Angel met the disability requirements. Moreover, the ALJ stated in his decision on Angel's third application that he had expressly refused to reopen the prior applications. Res judicata therefore forecloses an award of benefits based on Angel's prior applications.
 
 
 17
 In summary, the Secretary's determination that Angel did not suffer from a mental impairment under listing Sec. 12.05 prior to the expiration of his insured status is not supported by substantial evidence in the record. Accordingly, we REMAND this case to the district court for entry of an order directing the Secretary to establish, pursuant to the appropriate law and regulations, from which monthly disability benefits should begin, given a January 13, 1986 application.
 
 
 
 [1]
 The listing Sec. 12.05(B) provides that an individual is disabled if his IQ score is 59 or less. The listing Sec. 12.05(C) provides that an individual is disabled if his IQ is 60-69 and there is some physical or other mental impairment imposing a significant work-related limitation of function
 
 
 [2]
 Angel's testimony concerning his non-work experiences also supported Boyd's findings. When asked whether he could read a newspaper, Angel testified: "Yes, I can read some. I can't pronounce big words." Later he testified that, although he reads the local paper, he does so "a little at a time where most readers would read it probably in thirty, forty minutes." The claimant's school records, which were introduced into evidence, reflected that he received mostly Bs, along with some Cs and As. However, his mother stated in an affidavit that Angel had great difficulty learning, took summer school classes, and was socially promoted by a teacher who felt sorry for him
 
 
 [3]
 Immediately after reciting the factors leading him to the belief that the farming operation involved complexities incompatible with a finding of retardation, Dr. Speal stated "and that, that is why I have a question about this form here. I would like to establish whether he indeed filled that out because the vocabulary level used on this is not consistent with the level of retardation reported."