**Angel LOPEZ, Plaintiff,**

v.

**SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. H88–659.**

United States District Court, N.D. Indiana, Hammond Division.

June 10, 1992.

**1352**

James Alanoff, Munster, Ind., for plaintiff.

Robin W. Morlock, Asst. U.S. Atty., Hammond, Ind., for defendant.

## ORDER

LOZANO, District Judge.

The Plaintiff, Angel Lopez (hereinafter "Lopez"), brings this action pursuant to § 205(g) of the Social Security Act (hereinafter "Act"), 42 U.S.C. § 405(g). Lopez seeks judicial review of the Secretary of Health and Human Services' (hereinafter "Secretary") final decision that he is not entitled to a period of disability and disability insurance benefits under §§ 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423, nor to supplemental security income under §§ 1602 and 1614(a)(3)(A) of the Act, 42 U.S.C. §§ 1381a and 1382c(a)(3)(A).

This matter is before the Court on Lopez' Motion for Summary Judgment filed on April 5, 1990. For the reasons set forth below, Lopez' Motion for Summary Judgment is GRANTED and the case is REMANDED to the ALJ for further review consistent with this Order.

PROCEDURAL HISTORY

Lopez claimed he became disabled shortly after he was laid off work in 1982. (A.R. 64) He applied for Social Security Disability Insurance benefits (hereinafter "SSD") and Supplemental Security Income benefits (hereinafter "SSI") on August 27, 1985. (A.R. 62, 64,) Lopez' application was denied both initially and upon reconsideration. (A.R. 71–72, 77–78) Lopez then filed a request for hearing before an Administrative Law Judge (hereinafter "ALJ"). (A.R. 106–107) Based on new evidence of a mental impairment not previously considered, J. Lawson Brown, the ALJ, issued an order on June 2, 1986, remanding Lopez' claim back to the state agency. (A.R. 160–161)

On remand, the state agency issued a new decision finding Lopez disabled as of May 1, 1986 due to a mental disorder. (A.R. 173–174) Lopez petitioned for reconsideration of his onset date, but administrative review was denied. (A.R. 192) Once again, Lopez filed a request for hearing before an ALJ. (A.R. 221) ALJ Jerome B. Blum held Lopez' second hearing on December 28, 1987. (A.R. 32) On May 5, 1988, the ALJ determined that Lopez was not disabled within the meaning of the Act at any time prior to May 1, 1986. (A.R. 12, 16). The Appeals Council of the Social Security Administration declined review of the ALJ's decision on October 4, 1988. (A.R. 3) The ALJ's decision of May 5, 1988, therefore, constitutes the final deci-

sion of the Secretary of which Lopez now seeks judicial review.

## CLAIMANT'S HISTORY

Born on May 31, 1943, Lopez was 44 years old at the time of the second hearing before the ALJ. (A.R. 12) Lopez has a seventh grade education which he obtained in Puerto Rico. He remains illiterate in English. (A.R. 12, 14) Lopez also has difficulties orally communicating in English. (*Id.*) Although hampered by a language barrier, Lopez was able to work in a steel mill as a general laborer until he was laid off work in 1982. (A.R. 12) Lopez' work in the steel mill was unskilled, requiring light, medium, and heavy exertional levels. (A.R. 14)

At the second administrative hearing, held on December 28, 1987, Lopez testified that he had become disabled due to a non-traumatic back injury and a gastrointestinal disorder.[1] (A.R. 42–44) Lopez could not give a specific date of onset. He was laid off of work in 1982 or 1983. (A.R. 39) Lopez claimed that he has always had back problems, starting in the mid–70's. (A.R. 40) Lopez also asserted that he had not driven for the last five months due to back pain. (A.R. 42, 45) Lopez' back pain requires him to take Tylenol Number Four as well as prescription drugs. (A.R. 44) He currently has problems walking and sleeping. Specifically, Lopez testified that he can only walk about one block, then he must rest. He also testified that he can sit in a chair for only fifteen minutes and then he must stretch. Moreover, Lopez testified that he cannot sit or stand for eight hours and would have to lie down at some point during this period. (A.R. 45–49)

Additionally, several doctors' reports were submitted at the second administrative hearing.[2] In August 1985, Lopez was hospitalized for gastrointestinal bleeding. (A.R. 109) Due to the bleeding, Lopez underwent a complete colectomy[3] to correct the problem. (*Id.*) Except for a urinary problem after surgery, Lopez' physician,

Dr. Jacobo, stated that his gastrointestinal bleeding had been corrected. (*Id.*) Although Lopez' gastrointestinal bleeding had been corrected, Lopez complained of frequent diarrhea to several physicians. (A.R. 148, 152, 153) None of the physicians observed any diarrhea; rather, the physicians merely documented Lopez' subjective complaints in their reports. (*Id.*)

At the second hearing, a report submitted by Dr. J. Behr stated that he had examined Lopez on October 5, 1985. (A.R. 133) Dr. Behr observed that Lopez walked with a normal heel-toe reciprocal gait. (*Id.*) Dr. Behr also performed several flexibility tests and evaluated x-rays of Lopez' back. (A.R. 134) Doctor Behr opined that no evidence existed which would indicate low back pain or nerve root compression, or which would warrant restrictions in Lopez' daily activities. (*Id.*) Dr. J. Jacobo also supplied a report indicating that Lopez experienced back pain of unknown etiology.

Dr. E.M. Shepard reported that he examined Lopez on April 11, 1986. (A.R. 146) Dr. Shepard observed that Lopez walked with a normal gait, but demonstrated hyperlordosis. (*Id.*). Lopez could flex forward within 20 centimeters from the floor to his fingertips, but his extension was limited and painful. (*Id.*) Dr. Shepard also evaluated x-rays, a CT scan, and a myelogram of Lopez' back. X-rays were normal and the myelogram did not show clear cut epidural defect, but the CT scan showed significant spinal stenosis. (*Id.*) In fact, the CT scan also demonstrated a herniated disk at the L5 S1 level of the left side. (A.R. 226) Dr. Shepard opined that Lopez suffered from spinal stenosis which caused his low back pain and neurological intermittent claudication. (A.R. 146) Dr. Shepard discussed Lopez' treatment options with him and recommended that surgery would be of help. (*Id.*)

Dr. B. Guberman examined Lopez on January 25, 1988, and submitted his report

---

1. Lopez also claims disability due to a mental disorder. (A.R. 161)

2. These reports were the exhibits marked as evidence at the first administrative hearing.

3. Colectomy refers to an excision of a portion of the colon. *Dorland's Illustrated Medical Dictionary* (25th ed. 1974).

to the ALJ. (A.R. 253) Dr. Guberman found range of motion abnormalities in Lopez' lumbar spine area. (A.R. 257) He also found sensory abnormalities which suggested nerve root damage. (*Id.*) The sensory abnormalities were not, however, diagnostic of nerve root damage and no confirmatory motor or reflex abnormalities existed. (*Id.*) Dr. Guberman stated there was no history of intermittent claudication. (A.R. 257) He observed that Lopez could not squat and experienced difficulty when walking heel to toe. (A.R. 256)

DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides in relevant part that:

[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.... A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(a)–(c). Pursuant to Rule 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County R.E.M.C.*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167 (7th

Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–252, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

In a Social Security case where a plaintiff seeks district court review of the Secretary's decision to deny benefits, a motion for summary judgment and the procedure which the court must follow in ruling on it differ slightly from other civil cases. First, the court's scope of review is limited to determining whether the Secretary's decision is supported by substantial evidence and whether the Secretary applied the correct legal standards to reach that decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The scope of review is confined to the administrative record and pleadings. *Garcia v. Califano*, 463 F.Supp. 1098, 1100 (N.D.Ill.1979) (citing *Davis v. Califano*, 437 F.Supp. 978, 979 (N.D.Ill.1977); *Brown v. Sec'y of Health, Educ. & Welfare*, 403 F.Supp. 938, 940 (E.D.Wis.1975)). The Court's power is limited to entering, upon the pleadings and the administrative record, a judgment reversing, affirming, or modifying the Secretary's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Court may not consider new evidence except for the purpose of determining whether remand is appropriate, and may not reweigh the evidence. *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989); *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1047 (1st Cir.1980). Moreover, a district court does not make findings of fact but rather critically reviews the findings of fact made by the Secretary. *See McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir.1980) ("The decision of the district court is not subject to review under the 'clearly erroneous' standard of Fed.R.Civ.P. 52(a) normally employed by this [c]ourt because the findings of fact are those of the Secretary and not of the district court."); accord

*Brown v. Finch,* 429 F.2d 80, 82 (5th Cir. 1970); *Knox v. Finch,* 427 F.2d 919, 920 (5th Cir.1970).

▪ An applicant for disability insurance benefits must establish an "inability to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment which … can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A); *Kelley v. Weinberger,* 391 F.Supp. 1337, 1339 (N.D.Ind.1974). A physical or mental impairment is "an impairment that results from anatomical physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is not enough for the plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff,* 307 F.2d 840, 844 (4th Cir.1962), *cert. denied sub nom. Heath v. Celebrezze,* 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); *Garcia v. Califano,* 463 F.Supp. 1098, 1102 (N.D.Ill.1979).

▪ The plaintiff has the burden of establishing that he became disabled within the meaning of the Act on or before the date his insured status expired. *Meredith v. Bowen,* 833 F.2d 650, 652 n. 1 (7th Cir. 1987) (citing 42 U.S.C. § 416(i)(3); *Jeralds v. Richardson,* 445 F.2d 36, 39 (7th Cir. 1971)); *Owens v. Heckler,* 770 F.2d 1276, 1280 (5th Cir.1985); *Garner v. Heckler,* 745 F.2d 383, 390 (6th Cir.1984). "The law requires that a claimant demonstrate his disability within the prescribed period of eligibility, not prior to it or subsequent to the dates in question." *Jeralds,* 445 F.2d at 39.

The Secretary has adopted a five-step sequential evaluation process to determine if a person is disabled. According to this process, the following questions are addressed in order:

(1) Is the claimant currently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the impairment equal or exceed one of a list of specific impairments?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work in the national economy"?

Any affirmative answer leads either to the next step, or on steps (3) and (5) to a determination that the claimant is disabled. A negative answer, at any point other than step (3), stops inquiry and leads to a determination that the claimant is not disabled.

20 C.F.R. § 404.1520(b)–(f). *See also Guzman v. Bowen,* 801 F.2d 273, 274 (7th Cir.1986); *Bunch v. Heckler,* 778 F.2d 396, 399 n. 5 (7th Cir.1985); *Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985).

This Court's "[r]eview of the Secretary's findings is limited to a determination of whether those findings are supported by substantial evidence based on the record as a whole." *Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982) (citations omitted). *See also Ray v. Bowen,* 843 F.2d 998, 1001 (7th Cir.1988); *Burnett v. Bowen,* 830 F.2d 731, 734 (7th Cir.1987). "Substantial evidence" has been described as "more than a mere scintilla." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Bowen,* 868 F.2d 921, 923 (7th Cir.1989) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). *See also Ray v. Bowen,* 843 F.2d at 1001; *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986).

The question on review is not whether the plaintiff was disabled as of the date in question, but whether the Secretary's decision that the plaintiff was *not* disabled as of that date is supported by substantial evidence. It is fundamental that this Court not reweigh the evidence. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987); *Delgado v. Bowen,* 782 F.2d 79, 82–83 (7th Cir.1986). "If the record as a whole contains substantial evi-

dence to support the ALJ's [or the Secretary's] factual determinations, however, then ... [the decision of the Secretary must be affirmed] unless there has been an error of law." *Waite v. Bowen,* 819 F.2d 1356, 1360 (7th Cir.1987); *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985).

The ALJ entered thirteen different findings of fact, most of which remain uncontested. (A.R. 15–16) The contested factual findings are as follow:

4. The claimant's allegation of severe pain and limitation from July of 1982 to May of 1986 is not supported by the objective evidence of record and cannot be accepted as credible.

5. The claimant has the residual functional capacity to perform the physical exertion and non-exertional requirements of work except for standing for long periods of time, walking long distances, lifting weights of more than 10 pounds, regularly manipulating hand and foot controls, and performing vigorous movements. These restrictions are imposed as much to give the claimant some sort of piece of mind as for physical reasons. From a strictly non-exertional standpoint, the claimant should not be asked to perform high stress jobs of a semi-skilled nature (20 CFR 404.-1545 and 416.945).

\* \* \* \* \* \*

12. Although the claimant's additional non-exertional limitations do not allow him to perform the full range of sedentary work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: assembler of small parts, machine operator, and hand packager. There are some 8,000 of these jobs in Lake County Indiana.

13. The claimant was not under a "disability," as defined in the Social Se-

curity Act, at any time through the date of this decision (20 CFR 404.-1520(f) and 416.920(f)).

(A.R. 15–16)

Lopez disputes the ALJ's findings of fact, claiming (1) the ALJ erred as a matter of law by requiring an exact diagnosis of Lopez' injury before finding him disabled; (2) the ALJ improperly disregarded the opinions of Lopez' treating physicians; (3) the ALJ improperly disregarded Lopez' testimony; and (4) the ALJ failed to evaluate the combined effect of all of Lopez' impairments. The Secretary contends that Lopez failed to prove his disability because he did not present objective medical evidence *which would corroborate his subjective* complaints of pain. Of the four issues presented, the second is dispositive.[4] Thus, only the second issue will be considered here.

*Objective Medical Evidence*

■ The Act requires that subjective complaints of pain be supported by objective medical evidence. 42 U.S.C. § 423(d)(5)(A); *Clark v. Sullivan,* 891 F.2d 175, 177 (7th Cir.1989); 20 C.F.R. §§ 404.-1508 and 404.1528; *see Walker v. Bowen,* 834 F.2d at 641 (subjective complaints of discomfort may be discounted if they are not borne out by objective evidence). Thus, in order to establish a disability, Lopez' subjective complaints of pain must be corroborated by objective medical evidence. *Stuckey,* 881 F.2d at 508; *Nelson v. Secretary of Health and Human Services.,* 770 F.2d 682, 685 (7th Cir.1985).

The ALJ found that Lopez did not corroborate his subjective complaints of pain with objective medical evidence and that Lopez' credibility should therefore be discounted. In particular, the ALJ found that Lopez failed to introduce any medical evidence respecting the years 1982–1985. Moreover, the ALJ determined that the evidence Lopez did introduce from 1985 to the present contained only subjective complaints of back pain.

---

4. Lopez characterized the second issue as a disregard for his treating physicians' opinions. However, in his brief, Lopez argues that the ALJ disregarded objective medical evidence. This Court shall therefore consider this argument as a disregard for objective medical evidence.

The ALJ specifically noted that on October 5, 1985, Dr. J. Behr, one of Lopez' treating physicians, opined that Lopez did not suffer any deficiencies which would limit his daily activities. Additionally, the ALJ considered that Dr. J. Jacobo, another of Lopez' treating physicians, indicated that the medical etiology for Lopez' back pain remained unknown. The ALJ also indicated that in December 1985, Dr. Jacobo confirmed that Lopez' range of motion in his back was adequate, that no neurological deficiencies existed, that an x-ray of the lumbar spine area was normal, and that Lopez did not suffer muscle spasms.

Turning to 1986, the ALJ considered two reports [5] given by Dr. E. M. Shepard. The ALJ noted that although Dr. Shepard opined that Lopez suffered from congenital spinal stenosis, no objective medical test could corroborate Shepard's opinion. In fact, the ALJ stated that a myelogram of Lopez' back showed no abnormalities. Accordingly, the ALJ concluded that Lopez' subjective complaints of pain from 1982–1986, were not supported by objective medical evidence.

Lopez contends, however, that his subjective complaints of back pain are corroborated by objective medical evidence. Specifically, Lopez points to the report submitted by Dr. Shepard. Lopez argues that the ALJ erred in dismissing part of Dr. Shepard's report. Lopez contends that in his report, Dr. Shepard indicated that a CT scan established significant spinal stenosis causing the intermittent claudication from which Lopez suffers. The ALJ's summation of Dr. Shepard's report states:

> Again all neurological signs were normal. The only abnormality was the claimant's allegations of pain ... The doctor stated that he felt the claimant was suffering from congenital spinal narrowing, but offered no test or sign that would confirm this opinion.

However, the pertinent portion of Dr. Shepard's report states:

> X-ray demonstrated normal lumbosacral spine, however CT scan demonstrated significant spinal stenosis, felt to be congenital. His myelogram did not show clear cut epidural defect. I feel that this gentleman is suffering from his congenital spinal stenosis and this is causing his low back symptoms and the neurological intermittent claudication.

Thus, contrary to what The ALJ reported in his decision, Lopez' subjective complaints of back pain were supported objectively by the CT scan results.

■ Even though objective medical evidence exists, an ALJ is not required to articulate every piece of evidence in his written decision. *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984). An ALJ cannot practically discuss every piece of evidence in his written report and to require him to do so would be fruitless. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir.1984). In this instance, however, a more critical question exists other than the mere failure of the ALJ to specifically articulate the reasons for discounting evidence. Here, the ALJ totally disregarded evidence. *See Garfield*, 732 F.2d at 609. An ALJ cannot specifically select only that evidence which is favorable to his conclusions and disregard all other evidence. *Switzer v. Heckler* 742 F.2d 382 (7th Cir.1984); *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir.1984); *see Whitney v. Schweiker*, 695 F.2d 784 (7th Cir.1982).

Although the ALJ discussed Dr. Shepard's report, he failed to consider all the evidence in the report. As previously noted, Dr. Shepard stated in his report that a CT scan established that Lopez suffered from congenital spinal stenosis. The ALJ reported, to the contrary, that "[t]he doctor stated that he felt the claimant was suffering from congenital spinal narrowing, but offered no test or sign that would confirm this opinion." The ALJ's disregard for the CT scan distorted and misrepresented the doctor's report. This selective method of evaluating evidence is improper.

---

5.  Dr. Shepard's second report shall not be discussed except to say that the report was virtually identical to the first.

■ Moreover, the disregarded medical evidence is not irrelevant to the ALJ's analysis. All relevant, credible, medical evidence that is supported by clinical findings should be considered and discussed by the ALJ. *Garfield*, 732 F.2d at 610. Based on his report, Dr. Shepard advised Lopez that surgery should be considered as an option to correct the problem. This would seem to indicate that Dr. Shepard felt Lopez' injury did exist and was severe. That is, if Dr. Shepard did not think Lopez' injury existed, he would not have recommended surgery. Moreover, the ALJ himself emphasized the lack of objective medical evidence in paragraph number 4 of his findings where he stated: "[t]he claimant's allegations of severe pain and limitation from July 1982 to May 1986 are not supported by the objective evidence of record and cannot be accepted as credible." Thus, the objective medical evidence in Dr. Shepard's report, properly considered, may have affected the ALJ's decision pertaining to Lopez' credibility, the question of whether Lopez could perform any sedentary skills, and ultimately, the question of whether Lopez was disabled.

Additionally, nothing in the record indicates that Dr. Shepard's report was not credible. Again, the fact that the ALJ specifically referred to portions of Dr. Shepard's report indicates that the ALJ thought the report was credible. Furthermore, Dr. Bruce A. Guberman's report, dated January 25, 1988, tends to corroborate Dr. Shepard's report with respect to Lopez' back pain. Dr. Guberman's report stated:

> The patient also has a history of low back pain and, on examination, there are range of motion abnormalities in the lumbar spine.... He has sensory abnormalities suggestive but not diagnostic of nerve root damage.

Dr. Guberman was under the impression that Lopez suffered from degenerative joint disease in the lumbosacral spine and had an acute and chronic lumbosacral strain. Notably, the ALJ failed to consider Dr. Guberman's report anywhere in his decision. This is disturbing because the ALJ refers to a report submitted by Dr. C. Helms, in which the doctor stated that he had no relevant information to report about Lopez. That is, the ALJ mentions a doctor that has no information about Lopez, but entirely disregards Dr. Guberman's report which contains relevant evidence which may corroborate the objective medical evidence of Dr. Shepard's report. This Court will not speculate as to why this occurred, but will simply reiterate that an ALJ cannot specifically select only that evidence which is favorable to his conclusions and disregard all other evidence. *Switzer v. Heckley*, 742 F.2d 382 (7th Cir.1984); *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984); *see Whitney v. Schweiker*, 695 F.2d 784 (7th Cir.1982). Under these circumstances, the total disregard for Dr. Guberman's report was also error. Ultimately, of course, it is within the ALJ's province to decide whether Dr. Guberman's report corroborates Dr. Shepard's report.

■ Other evidence in Dr. Guberman's report may contradict the objective medical evidence in Dr. Shepard's report. The district court is not the proper place to determine the weight each piece of evidence should receive. *Garfield*, 732 F.2d at 610. The ALJ is in the best position to evaluate the weight of the evidence and to determine the credibility of witnesses. *Walker*, 834 F.2d at 641. Thus, this Court does not cite to either Dr. Shepard's or Dr. Guberman's report in an effort to reweigh the evidence in this case. Rather, the Court refers their reports to explain its finding that because the ALJ disregarded objective medical evidence, he did not preserve a record that provides for meaningful judicial review. *See Zblewski*, 732 F.2d at 79. This Court emphasizes that it must look at the evidence as a whole and not just the evidence that the ALJ considers. In sum, the Secretary's final decision is not supported by substantial evidence.

## CONCLUSION

For the reasons set forth here in this opinion, Lopez' Motion for Summary Judgment is GRANTED and the case is REMANDED for a new hearing consistent with this Order.