Robert L. BUGGS, Plaintiff,

v.

**ELGIN, JOLIET & EASTERN
RAILWAY COMPANY,**
Defendant.

Civ. No. 2–92–CV–175 RL.

United States District Court,
N.D. Indiana,
Hammond Division.

May 13, 1993.

Zena D. Crenshaw, Thomas B. Felix, Amy J. Miller, Hammond, IN, for plaintiff.

Harold Abrahamson, Hammond, IN, Patrick W. Ritchey, Pittsburgh, PA, for defendant.

## *ORDER*

LOZANO, District Judge.

This matter is before the Court on a Motion for Summary Judgment filed by Defendant, Elgin, Joliet and Eastern Railway Company ("EJ&E"), on March 2, 1993. The Court, being advised in the premises, hereby **GRANTS** EJ&E's Motion.

BACKGROUND

Plaintiff, Robert Buggs ("Buggs") is a black male formerly employed by EJ&E as a switchman. Buggs originally worked for EJ&E from January 1, 1969, until October 1, 1977, when he was terminated. As a result of this termination, Buggs filed a charge with the Gary Human Relations Commission alleging race discrimination. The charge was turned over to the Equal Employment Opportunity Commission ("EEOC"), which issued a Right to Sue Letter on June 24, 1980. Consequently, Buggs filed a complaint in the United States District Court for the Northern District of Indiana alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The court found for Buggs and awarded reinstatement, back pay, and attorney's fees. *Buggs v. Elgin, Joliet & Eastern Ry. Co.,* Civil No. 80–553 (N.D.Ind.1986).

Buggs was reinstated on February 2, 1987, and actually returned to service on March 13, 1987. Buggs did not work from April 13, 1987 through June 9, 1988, due to injuries suffered in an automobile accident. Buggs was again unable to work from August 9, 1988 through March 28, 1989, because of a work-related hearing injury. EJ&E's Medical Director, Dr. Pretter, approved Buggs' return on the condition that Buggs wear ear plug hearing protection. Buggs signed a letter on March 28, 1989, which explained that a condition of his return to work was the wearing of protective ear plugs. The letter specifically stated that Buggs' failure to comply with the requirement would result in disciplinary action. Buggs admits he knew of and understood the requirement.

On November 23, 1990, while Buggs was working the 7 a.m., Hot Metal # 2 assignment, he suffered an ear injury as a result of his proximity to a controlled dynamite explosion. Buggs left work that day and was not released to return to work by his doctor until December 28, 1990. EJ&E began a formal investigation of the incident and notified Buggs of that investigation on November 23, 1990. The purpose of the investigation was to develop facts and determine Buggs' responsibility, if any, relative to the charges that Buggs failed to comply with the requirement that he wear ear plugs, and that Buggs gave a false statement to Trainmaster J.J. Bonner regarding the November 23, 1990, incident. EJ&E held Buggs out of service pending the results of the investigation. On January 11, 1991, EJ&E terminated Buggs' employment, citing Buggs' failure to comply with the requirement that he wear protective ear plugs and his provision of false statements to a trainmaster regarding the November 23, 1990, incident.

EJ&E provides a "Book of Rules on the Operating Department" to every transportation department employee, including Buggs, which employees are expected to comply with. Rule 700 states:

> Employees who are insubordinate, dishonest, immoral, quarrelsome, or otherwise vicious, or who are careless of the safety of themselves or others, or who are negligent in the performance of their duties, or who do not have or fail to exercise good judgment will not be retained in the service.

EJ&E cites this rule as support for its rightful termination of Buggs.

On January 24, 1991, Buggs filed a charge with the City of Gary Human Relations Commission claiming discrimination based on race. Following investigation, the City of Gary Human Relations Commission relinquished the matter to the EEOC. The EEOC found no probable cause and issued Buggs a Right to Sue Letter. Buggs filed the present action under Title VII claiming that he was discriminated against because of his race and that he was retaliated against because of his 1977 claim of discrimination and subsequent reinstatement.[1]

EJ&E moves for summary judgment on two separate grounds. First, EJ&E claims that Buggs failed to raise his claim of retaliation at the administrative level and therefore is precluded from asserting it in this Court, and, even if a retaliation claim is not precluded, Buggs fails to establish a *prima facie* case. Second, EJ&E argues that summary judgment is appropriate in this case because Buggs has failed to establish a *prima facie* case of race discrimination, and because EJ&E has articulated a legitimate nondiscriminatory reason for Buggs' termination which Buggs has failed to rebut.

DISCUSSION

■ Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *First Wis. Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must read all facts in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514;

*Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988).

The burden is upon the moving party to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrates an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tanenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). " 'Whether a fact is material depends on the substantive law underlying a particular claim and only disputes over facts that *might effect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.' " *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson,* 477 U.S. at 250–252, 106 S.Ct. at 2511–2512).

■ "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (1986).

*Failure to Assert Retaliation at Administrative Level*

■ Buggs' charge filed with the EEOC alleges only race discrimination. Not only

---

1. Buggs also asserted a claim under 42 U.S.C. § 1981. By order dated May 13, 1993, this Court granted EJ&E's Motion for Judgment on the Pleadings and Motion to Strike, dismissing

Buggs' claim under § 1981, and striking his demands for compensatory and punitive damages, and his demand for jury trial.

did Buggs fail to mark the box alleging retaliation, but he also failed to allege any facts in the explanation of the particulars of his EEOC charge which raise the issue of retaliation. Furthermore, the EEOC did not investigate retaliation. Buggs argues that EEOC charges are to be read liberally to protect Title VII plaintiffs so that a claim is not forfeited because of a mere technicality. However, if EEOC charges do not contain some specificity, the purpose of requiring an administrative remedy to allow for conciliation is thwarted.

The Seventh Circuit considered this issue in *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). The plaintiff, a sixty-five year old male, alleged employment discrimination on the basis of age as well as retaliatory demotion and firing. However, in his EEOC charge the plaintiff did not mark the box for retaliation nor did he allege retaliation. The Seventh Circuit upheld the district court's order granting summary judgment on the retaliatory discharge claim because the claim was not within the scope of the EEOC charge. *Id.* at 544.

A Title VII claim may be maintained in a district court if it is "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id.* (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985). Although a number of cases have allowed a retaliatory discharge claim to proceed without mention of that claim in the EEOC charge, those cases involved retaliation occurring after the filing of the charge, or were cases where notice was given the employer that retaliation was at issue, and thus, a double filing would serve no purpose. *Steffen*, 859 F.2d at 545 n. 2 (citations omitted).

Buggs contends that *Jenkins v. Blue Cross Mutual Hosp. Ins., Inc.*, 538 F.2d 164 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), requires a liberal reading of EEOC charges. In *Jenkins*, the plaintiff checked only the box alleging race discrimination and not the box for sex discrimination. However, in her explanation of the charge the plaintiff made reference to her sex as a reason for the discrimination. The court stated that the plaintiff's claim would not be denied based on a mere technicality of failing to check a box. *Id.* at 168.

In the case at hand, not only did Buggs fail to check the box for retaliation, he made no allegations at all referring to retaliation or to the prior claim. This amounts to more than a mere technicality, and thus, following the reasoning of the court in *Steffen*, summary judgment as to the claim of retaliatory discharge is appropriate. Whether Buggs established a *prima facie* case of retaliation need not be addressed because this claim is foreclosed for failure to properly file it with the EEOC.

### Race Discrimination

■ To establish a *prima facie* case of race discrimination under Title VII Buggs must show: 1) he is a member of a racial minority; 2) he was performing his job at a level that met the employers reasonable expectations; 3) he was fired; and 4) he was replaced. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1113–1114 (1992) (citations omitted). This showing creates a presumption of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for the action. *Id.* at 802–803, 93 S.Ct. at 1824–25. If EJ&E meets this burden, the presumption of discrimination is overcome, and the burden shifts back to Buggs to show by a preponderance of the evidence that EJ&E's explanation is a pretext or unworthy of credence, evincing EJ&E's discriminatory intent. *Id.* at 803, 93 S.Ct. at 1825; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

■ EJ&E argues that Buggs is unable to establish a prima facie case of race discrimination because he was replaced by a black person. This argument has been rejected by the Seventh Circuit. *Cygnar v. City of Chicago*, 865 F.2d 827, 842 (7th Cir.1989); *DeLesstine v. Fort Wayne State Hosp. and Training Ctr.*, 682 F.2d 130 (7th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). In *DeLesstine*, a black man brought an employment discrimination case under Title VII on the grounds that he had been terminated because of his race. The court held that the fact he was replaced by a member of a minority did not preclude the plaintiff from establishing a *prima facie* case. *Id.* at 133. The court reasoned that "Title VII does not establish a class of protected minorities and nonprotected others." *Id.* (citing *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096–97). Title VII works to ensure equal opportunity to each person regardless of race without regard for whether that person's race is already proportionally represented in the work force. *Id.* (citations omitted). Congress intended the removal of "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification...." *Id.* at 133 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971)). Therefore, the fact that Buggs was replaced by a black individual does not prevent Buggs from establishing a *prima facie* case of race discrimination. The protection of Title VII runs to Buggs as an individual and does not create a class of protected persons.

■ EJ&E also argues that Buggs is unable to make out a *prima facie* case because he cannot show that he was performing his job at a level that met EJ&E's legitimate expectations because he failed to comply with the requirement that he wear protective ear plugs and he allegedly gave false reports to a trainmaster, all in violation of Rule 700. Buggs disputes EJ&E's contention that he was performing his work to meet EJ&E's legitimate expectations. Because all facts must be viewed in the light most favorable to Buggs, the nonmovant, and Buggs' testimony that he was performing his work well enough to meet Elgin's legitimate expectations is sufficient to meet the burden of a prima facie case, Buggs is able to establish a prima facie case of race discrimination. *See Rush*, 966 F.2d at 1114.

■ While EJ&E's explanation does not prevent Buggs from establishing a prima facie case, it is a sufficient articulation of a legitimate nondiscriminatory reason for EJ&E's actions. An employer has a legitimate interest in insuring that it's employees comply with safety requirements and that an employee deal honestly with the employer regarding work related issues.

The burden must then shift back to Buggs to prove by a preponderance of the evidence that the explanation is unworthy of credence or is a pretext and that a discriminatory reason more likely motivated EJ&E. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of persuading the trier of fact that EJ&E intentionally discriminated against Buggs remains at all times with Buggs. *Id.* at 253, 101 S.Ct. at 1093–94. Buggs must show that he would not have been fired but for his race. *Rush*, 966 F.2d at 1117 (citations omitted).

■ In Plaintiff's Motion [sic] in Opposition to the Defendant's Motion for Summary Judgment, Buggs devotes 25 pages to recitation of facts which presumably he would rely upon to prove disparate treatment at trial. In Buggs' characterization, these instances include: 1) EJ&E's failure to include Buggs in a training program; 2) EJ&E's referral of Buggs to drug rehabilitation because of the presence of company dispensed medicine in his urine drug screen; 3) EJ&E's act of relieving Buggs of his duties and denying him compensation pending resolution of a nondisabling medical condition and cessation of related pain medication; 4) denial of holiday pay because Buggs failed to work a qualifying day due to military service; 5) requiring Buggs to wear ear plugs without compelling medical reason and in contravention of its own safety rules; 6) relieving Buggs of duties and denying him compensation because he wore a knee brace to work while subsequently requiring him to wear a back brace; 7) disciplining Buggs for being

late to an assignment though he was subsequently reassigned and completed a full shift on a new assignment; 8) disciplining Buggs for sustaining an injury while attempting to perform his duties as a switchman; 9) relieving Buggs of his duties and denying him compensation without first conducting a fair and impartial hearing to determine his responsibility, if any, for rule violations in contravention of the collective bargaining agreement; and 10) terminating Buggs for dishonesty based on unfounded, alleged motives that destroyed his credibility, as well as for violating an ambiguous provision under unprecedented and possibly inconsequential circumstances.

Buggs does not connect any of the alleged conduct to his race. Buggs does not attack the articulated legitimate nondiscriminatory motive as a pretext or show that it is unworthy of credence. Buggs merely identifies every unfavorable action taken towards him by EJ&E and in no way shows that these actions were taken because of his race. At most, Buggs disagrees with the reasons EJ&E expressed for terminating him, contending that he did not give any false statements, and that he was not purposefully violating the conditions of his employment because he did not intentionally refuse to wear his earplugs, but one had accidentally blown away.

Even if EJ&E was mistaken, in that Buggs was actually wearing ear plugs and did not make any false statements, Buggs has not shown discriminatory intent. *See Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d 557, 560 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987) (employer's mistake as to the reason employee was absent from work does not satisfy the showing of a pretext). "No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, Title VII . . . [does] not interfere." *Id.* Unless race was a factor, in that Buggs would have been kept on if he were white, he is not entitled to relief. *Id.* at 560–561. This Court will not dictate managerial practices not predicated on the Plaintiff's race.

Although Buggs may not state a separate claim of retaliation in this case, evidence of retaliation might support Buggs' allegation of race discrimination. *See Rush,* 966 F.2d at 1115. However, again Buggs makes no connection between the protected activity or his race and the alleged unfavorable treatment by EJ&E. Viewing the facts in the light most favorable to Buggs, summary judgment is appropriate because no reasonable trier of fact could find that EJ&E's reason for discharging Buggs was merely pretextual and unworthy of credence. *Id.* at 1118.

## CONCLUSION

For the foregoing reasons, EJ & E's Motion for Summary Judgment is **GRANTED.** There being no further claims before this Court, all pending motions are **MOOT** and will not be considered.